[Crim. No. 1343. Fourth Dist. Apr. 18, 1958.]

THE PEOPLE, Respondent, v. LARRY EUGENE DAY, Appellant.

Barton C. Sheela, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with a violation of section 11170.5 of the Health and Safety Code in that on March 21, 1957, he gave a false name and a false address in connection with the prescribing of a narcotic. A jury found him guilty as charged, his motion for a new trial was denied, and he was sentenced to prison. He has appealed from the judgment and from an order denying his motion for a new trial. The attorney who represented him at the trial was appointed by this court to represent him on this appeal.

A practicing physician in San Diego testified that the defendant came to his office on March 21 complaining of severe headache and nausea, and that he had not been able to sleep the preceding night; that the defendant said he had been taking treatments for this headache for several years and had been using pantopon; that he diagnosed this as a migraine headache and gave the defendant a prescription for 40 pantopon tablets, each containing one-third of a grain; that pantopon is a derivative of opium but "more refined"; that the defendant said his name was James C. Connor and that he lived at 2030 32d Street in San Diego, and he wrote this name and address in the prescription; and that he made the prescription in triplicate, giving two copies to the defendant and keeping the other copy in his book. He further testified that this occurred sometime after 12 noon that day, or a very short time before 12, and that he was not positive as to the exact time.

The original prescription was introduced in evidence and it was stipulated that the name on the prescription, James C.

Connor, was not the name of the defendant and that he had never lived at 2030 32d Street. A clerk in a pharmacy testified that the defendant came in on March 21 and handed her this prescription, which she gave to the pharmacist; that she told the defendant that it would take about five minutes to fill the prescription; and that the defendant waited for it. In reply to a question as to whether she could recall the approximate time this occurred she replied "I would say it was middle afternoon. I am not sure, but I would say it was."

The pharmacist testified that he saw the defendant in this pharmacy on March 21; that this clerk handed him this prescription and he placed his mark on it; that he filled the prescription and handed the narcotic to the defendant, keeping the original prescription and a duplicate; and that three or four days later he identified a picture of the defendant. When asked what time it was when he delivered the narcotic to the defendant he replied "I am not sure. I believe it was in the afternoon." When asked if there was any way he could estimate the approximate time, he replied "I can't tell you for sure what time of the day he was in. I don't know."

The defendant testified that he was in San Diego on the morning of March 21 and that he left San Diego between 11 and 12 a. m. on that day; that he had never used the name or address given on this prescription; that he had never visited this doctor; that he had never been in this pharmacy; and that he did not obtain any pantopon drugs at this pharmacy on March 21 or on any other day. He also admitted two prior convictions of a felony. The owner of a motel in Gardena testified that the defendant registered at her motel on March 21; that she had ascertained from her record that he checked in at 3 p. m. on that day; that she wrote 3 p. m. on the card but had no independent recollection of seeing the defendant there at that time; and that in the normal course of business she put down the time of registration within five minutes either way. She also testified that her motel was located some 125 miles from San Diego, and that it had taken her a little bit over three hours to drive the distance that day.

The appellant contends that the court erred in refusing to allow certain cross-examination of this doctor for the purpose of developing a motive on his part to falsely identify the appellant as the person who obtained this prescription, and in refusing the appellant permission to examine and introduce into evidence the doctor's narcotic register in order to prove motive affecting that witness' credibility. It is argued

that if the doctor was in the habit of negligently issuing narcotics to addicts he would have a motive to cooperate with the officers by identifying a picture shown to him by the officers as being the person to whom he had issued a narcotic prescription, rather than by identifying a person to whom he had actually issued the prescription. It is also argued that the refusal to allow him to examine and introduce into evidence the doctor's narcotic register deprived him of a fair trial, citing *Powell* v. *Superior Court,* 48 Cal.2d 704 [312 P.2d 698]; *People* v. *Riser,* 47 Cal.2d 566 [305 P.2d 1].

The doctor was asked on cross-examination how many opium derivatives he had dispensed during March, 1957. This was objected to as immaterial. Out of the presence of the jury the court asked the purpose of this question. The appellant's attorney replied that he had reason to believe that this doctor would issue narcotics to anyone who said he wanted it, and would have a motive to identify the wrong person in order to save his own skin; and that he thought he was entitled to show that this doctor had issued a great number of narcotic prescriptions and that he therefore had a motive to come in and testify to what the officers believed. The court stated that, because the defense was that this defendant was not the person who received the prescription, he would allow the doctor to be questioned as to how many prescriptions he had issued on that particular day, but nothing more. After the recess, in reply to questions, the doctor testified that he could not tell how many prescriptions he had written on March 21 without looking at his book; that he did not have the book with him; that the book was downstairs in this building; that he had given the book to the district attorney; and that he could refresh his recollection from that book. Appellant's attorney then said "I wonder if we could call for the production of that book?" The district attorney said that he had no objection to the witness going downstairs and refreshing his recollection from the book. Appellant's attorney then said he would like to see the book in court. The court stated that the book was not in court, and that the witness could refresh his memory later on by looking at the book and testify again. After 10 more pages of cross-examination the appellant's attorney said he had no further questions. The court then asked "Are you both through with the doctor" and the district attorney replied "Unless he would like that other information, if he wants to go down and refresh his recollection, I have no

objection.'' The attorney then said he would rather see the book here in court. The attorney then asked the doctor if he was shown that book that morning in court, and the doctor replied that it was not shown to him. The appellant's attorney then said: ''I can't force them to bring it up here then, Your Honor, in that case.''

It does not too clearly appear that material evidence was improperly excluded and, in any event, it does not appear that a sufficiently definite request for the production of the doctor's book was made. No subpoena had been issued and the only thing in the nature of an offer of proof was counsel's statement that he thought he was entitled to show that this doctor had issued a great number of narcotic prescriptions, more than the average for his type of practice. If it be assumed that any such evidence was improperly excluded the question would remain whether it was sufficiently prejudicial to require a reversal. While it was held in *People* v. *Riser, supra,* that evidence in connection with certain documents was improperly excluded, it was also held that whether or not the error was prejudicial depended upon whether there was a reasonable probability that the jury would have reached a different verdict had the defendant been allowed to obtain and introduce in evidence the documents in question. It was there held that in view of the other evidence of guilt the error in this connection would not justify a reversal. In the instant case, three witnesses positively identified the appellant as the person who had acted in connection with this prescription. The evidence was amply sufficient to support the verdict if the jury believed those witnesses. The attempted proof of an alibi was not very convincing. Assuming that the appellant registered in the motel in Gardena within a few minutes of 3 p. m., the trip from San Diego could well have been made in considerably less than three hours. The time when the prescription was obtained was not definitely established, and it is not surprising that the three witnesses were unable, several months later, to remember the exact time. If it be assumed that the evidence as to the number of such prescriptions issued by this doctor was admissible, and that if produced it would have been material on the question of his credibility, this was only one thing to be considered in that connection, and it would have in no way affected the credibility of the other two witnesses who positively identified the appellant as the person who had the prescription filled. Irrespective of any possible error in this connection it is not reasonably probable

that the jury, in the face of the evidence as a whole, would have brought in a different verdict had this evidence been admitted.

It is next contended that the court erroneously admitted evidence that the appellant associated with known narcotic users. In response to questions on cross-examination the appellant stated that he had had some conversation with the officer who returned him to San Diego from Porterville. He was then asked whether during this trip he had not told this officer that most of his associates were users of narcotics, and he replied "No." Subsequently, this officer testified in rebuttal that on this trip the appellant told him "I'll admit that a lot of my friends, or most of them that I have been down there with are narcotic users." No objection was made to any of these questions and a claim of error in this connection may not now be made. (*People* v. *King*, 104 Cal.App.2d 298 [231 P.2d 156]; *People* v. *Farrell*, 133 Cal.App.2d 427 [284 P.2d 29].) Moreover, no great prejudice resulted from the questions themselves, which brought forth a denial, and the officer's testimony in rebuttal was by way of impeachment. Under the circumstances, no reversible error appears.

Finally, it is contended that the court erred in permitting the prosecution "to use an expert witness to establish motive of the defendant to commit the crime." A narcotic officer of the San Diego police department was permitted to testify that the price of the drug pantopon was greater on the black market than when purchased from a druggist. It is argued that when the perpetration of an offense is brought home to a defendant the motive is immaterial and should be excluded, and that this tended only to show a motive which would be general to all narcotic users, and not to this specific defendant. No error appears in this connection. (*People* v. *Planagan*, 65 Cal.App.2d 371 [150 P.2d 927]; *People* v. *O'Brand*, 92 Cal.App.2d 752 [207 P.2d 1083].)

The judgment and order denying a new trial are affirmed.

Griffin, J., and Mussell, J., concurred.