[Crim. No. 4474.   First Dist., Div. Three.   June 18, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT CHARLES NEELY, Defendant and Appellant.

Peter F. Sloss, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Robert R. Granucci and John F. Kraetzer, Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Appellant was convicted of attempted rape.

The record supports the following statement of facts: Delores, the prosecuting witness, was a patient at Napa State Hospital. She testified that on March 3, 1963, she saw appellant at the hospital; that he pushed her into his car and drove off towards Vallejo. There was another man in the car. In Vallejo appellant received a ticket for a traffic violation, but Delores did not ask help from the officer because she was afraid. At Vallejo the other man left the car. Appellant pur-

chased some liquor and drove with Delores to the town of Stewart's Point. Here appellant stopped and entered a store to purchase food. Delores also entered the store, where she physically seized a clerk and told him she had been taken from Napa State Hospital, and asked help. She also asked help from two boys outside the store, but no help was given. Appellant drove Delores a short distance farther, took her into a field, struck her on the head with a wine bottle, slapped her, cut off her undergarments with a pocket knife, and attempted to have sexual intercourse with her. He eventually left her in the field and she made her way back to the store.

Appellant testified he had never seen Delores prior to the preliminary hearing. He testified he was at home at the time of the alleged assault. His father and a friend supported his claim of alibi.

Raymond Burleyyoung, the clerk in the store at Stewart's Point, positively identified appellant and Delores. He testified both were in the store on March 3, 1963. He described appellant's car. He corroborated Delores' story that appellant had bought food and that Delores had sought help while in the store. This witness also testified that half an hour to 45 minutes after appellant and Delores left the store he saw appellant's car speeding south and that 15 or 20 minutes later Delores appeared, bruised, "mussed up," and carrying her slashed undergarments in her hand.

The appellant correctly contends that the trial court erred in denying him the right to cross-examine Delores concerning past complaints of rape. At the preliminary hearing, and at trial, Delores denied she had ever consented to intercourse with a man. In one portion of her testimony, however, she testified she did not know the meaning of the words "sexual intercourse" and "rape." She was then asked if she knew one Phillip. The court sustained an objection to this question. Out of the presence of the jury, appellant offered to prove that Delores had complained to the hospital authorities that she had been raped by Phillip; that on another occasion she complained to hospital authorities of rape, saying it was the third time she had been raped.

In support of the trial court's ruling, the Attorney General argues there was no offer to prove that past complaints of rape made by Delores were false and hence the evidence was inadmissible. Of course, if such past complaints of rape were in fact true, they would have no relevancy in the trial of the charge against appellant. If on the other hand such

charges were false, then their relevancy is obvious (*People* v. *Hurlburt*, 166 Cal.App.2d 334 [333 P.2d 82, 75 A.L.R.2d 500, 510]; *People* v. *Pacheco*, 220 Cal.App.2d 320, 323 [33 Cal.Rptr. 735]). Here the record shows that Delores was a mentally ill person who had been in the Napa State Hospital for several years. Her testimony indicates some uncertainty and confusion concerning the exact nature of her charges against appellant. The evident purpose of the cross-examination was to probe the state of mind of the prosecutrix, in the hope of establishing the falsity of her past complaints of rape, and the likelihood that the charge against appellant was untrue. We think appellant's cross-examination should have been permitted to continue, but for reasons hereafter stated we do not think appellant was prejudiced by the trial court's ruling. (See *People* v. *Burton*, 55 Cal.2d 328, 344 [11 Cal.Rptr. 65, 359 P.2d 433].)

Appellant next contends it was error to exclude certain evidence relating to the veracity of Delores. In this connection, appellant called Dr. Charles Graceffo as a witness. Dr. Graceffo testified that Delores' general reputation for truth, honesty and integrity was bad. He was not permitted to testify as an expert concerning her veracity. Dr. Graceffo is not a psychiatrist. He is however a medical doctor employed at the Napa State Hospital. He was in charge of Delores' case and familiar with her medical records. In chambers he stated the substance of the testimony proposed to be offered on behalf of the appellant thus: "Well, I feel that she doesn't tell untruths, as such, but if it's possible, these are mostly, I think, exaggerations and distortions due to the fact that her judgment is poor and often times she is not completely able to understand just what is happening to her or what is meant by certain suggestions that are made to her through the day, at the hospital, so that she's given to many misapprehensions, fears, and as a result of this, distorts what is being said or what is really intended. ... Yes, as I said, I don't believe she wilfully lies, but I believe she's given to exaggerations due to misapprehensions, fears and lack of understanding as to what is actually intended by other people. So I don't think she wilfully lies."

We think the offered testimony should have been admitted. Generally, a witness may be impeached only as specified in Code of Civil Procedure sections 2051 and 2052. These rules, however, are not absolute. (*People* v. *Hurlburt, supra.*)

Delores suffered from serious mental illness, de-

scribed in part as a "chronic brain syndrome with epilepsy and psychotic reactions." At times she was paranoid. Of course, the testimony proposed to be given by Dr. Graceffo would have had some effect upon her credibility as a witness and in this sense would have been impeaching testimony.

Nevertheless the charge here is rape, and as the decided cases have held, the rules concerning permissible methods of impeachment of the prosecutrix are in such cases more liberal than those allowed generally. (See *People* v. *Hurlburt, supra; People* v. *Lambert,* 120 Cal. 170 [52 P. 307] ; *People* v. *Adams,* 92 Cal.App. 6 [267 P. 906].) Wigmore, in his treatise on evidence argues that "No judge should ever let a sex-offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician." (3 Wigmore, Evidence, § 924a, p. 460.) In some jurisdictions, expert medical testimony relating to the credibility of a prosecutrix in a sexual offense case has been allowed. (See *People* v. *Bastian,* 330 Mich. 457 [47 N.W.2d 692] ; *People* v. *Cowles,* 246 Mich. 429 [224 N.W. 387] ; *Miller* v. *State,* 49 Okla. Crim. 133 [295 P. 403] ; *State* v. *Pryor,* 74 Wash. 121 [132 P.874, 46 L.R.A. N.S. 1028].) (See also, Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach,* 48 Cal. L.Rev. 648, 673-676.)

While the jury had been told that Delores' general reputation for truth, honesty and integrity was bad, the appellant was also entitled to have the jury informed of the mental and emotional instability of the prosecuting witness through the expert medical testimony of the doctor in charge of her case. The jury was entitled to hear such testimony and to have it before them as an aid in evaluating her testimony.

Although there is error in the record, it does not rise to the dignity of reversible error in this case. As we have noted in the statement of facts, appellant's defense rested on his alibi. His position was that he did not know the prosecutrix and had never seen her prior to the preliminary hearing. If the jury had accepted this story, appellant would have been acquitted. It would have been immaterial whether the prosecuting witness had or had not been raped. The evidence against appellant, however, was very strong. When cited in Vallejo for a traffic violation, as described by Delores, there was a woman in his car. He was positively identified as being in the company of Delores at Stewart's Point a short time before the alleged attack took place;

Delores' appeal for help was verified; appellant's car was seen at Stewart's Point, and later the same car was seen passing through town at a rapid rate of speed. Soon thereafter, Delores appeared, bruised, bleeding, crying and carrying her slashed undergarments in her hands. This evidence clearly points to appellant's guilt. We cannot say that, had the errors respecting the admission of evidence not occurred, a result more favorable to appellant would have been probable. Where there is error in the admission or rejection of evidence at the trial we are enjoined by article VI, section 4½, of the California Constitution not to reverse unless the error has resulted in a miscarriage of justice. (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].) On the record before us it is clear that no miscarriage of justice has occurred.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1964. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.