[L. A. No. 28520. In Bank. Feb. 15, 1966.]

WALTER M. BALLARD, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

162

Gostin & Katz and Louis S. Katz for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, James Don Keller, District Attorney, and Richard H. Bein, Deputy District Attorney, for Respondent and Real Party in Interest.

Evelle J. Younger, District Attorney (Los Angeles), and Harry B. Sondheim, Deputy District Attorney, as Amici Curiae on behalf of Respondent and Real Party in Interest.

TOBRINER, J.—Petitioner is a physician charged with the rape of a patient to whom he allegedly administered an intoxicating narcotic or anesthetic substance in order to prevent resistance, a violation of Penal Code section 261, subdivision 4. He petitions for writs of mandate and prohibition (1) to obtain certain evidence allegedly seized illegally by the prosecution; (2) to prohibit the introduction of designated evidence at the trial; (3) to compel certain pretrial discovery; and (4) to restrain the proceedings in the trial court pending the realization of the relief sought. '

We hold that this court, upon an extraordinary writ, does not review the trial court's ruling upon the admissibility of tape recordings of conversations of petitioner and the complaining witness; that since the tape recordings and the transcriptions of them are not properties which have been seized from petitioner, he cannot gain exclusive possession of them; that in the absence of some showing of good cause, the trial court did not err in refusing to order the prosecution to supply petitioner with the names and addresses of witnesses whom the police or prosecution have interviewed and with the results of a polygraph examination of the complaining witness; that petitioner cannot justify such discovery on the ground that it would aid him in the determination of whether he had been denied his constitutional right to counsel at the time he made incriminating statements since, in the absence of custody, the accusatory stage could not have matured; that although the trial court may in its discretion order a complaining witness in a sex violation case to submit to a psychiatric examination, the prosecutrix in the instant case should not presently be required to undergo such an examination.

On October 6, 1964, the prosecutrix lodged a complaint with the San Diego Police Department, accusing petitioner of having performed an act of sexual intercourse upon her on October 4 without her consent and while she could not resist because of the drugs which he had administered to her. The police then gave the prosecutrix a lie detector test; a police physician examined her.

The day after the victim filed the charges the police furnished her with an electronic microphone to conceal in her purse and instructed her to go to petitioner's office in order to obtain incriminating statements from him. The officers placed a device in a police car outside the physician's office for the purpose of recording the statements. Thereby the officers did obtain from petitioner several incriminating statements.

On October 8, a police expert determined that the victim's clothing contained semen stains. On October 13, October 16, and November 4, after a specially equipped electronic recording device had been attached to her telephone, the victim, in the presence of the police, called petitioner, asking questions concerning the incident. During these telephone conversa-

tions petitioner made several incriminating statements, which the police recorded.

On November 4, 1964, the San Diego County Grand Jury indicted petitioner for the crime of rape in violation of Penal Code section 261, subdivision 4.

## I. *Illegally obtained evidence*

The trial court denied petitioner's motion to suppress by which he sought the delivery or the destruction of the recordings and transcripts on the ground that they were the product of an illegal search and seizure[1] and had been obtained in violation of his privilege against self-incrimination and his rights to counsel and to remain silent.[2] Petitioner now seeks a writ of mandate or a writ of prohibition restraining the superior court from the introduction into evidence of the recordings or transcripts or from the admission of testimony concerning any of the recorded conversations. Petitioner urges us to order the superior court to deliver the recordings and transcripts to him or to destroy them.

■ This court cannot at this time review the trial court's decision refusing to suppress the evidence. (See *People* v. *Justice Court* (1960) 185 Cal.App.2d 256 [8 Cal.Rptr. 176]; Cal. Criminal Law Practice (Cont.Ed.Bar) (1964) § 5.11; Witkin, Cal. Criminal Procedure (1963) 654; Witkin, Cal. Evidence (1963 Supp.) § 21; Fricke, Cal. Criminal Procedure (1963) 532, 561; cf. *People* v. *Williams* (1963) 218 Cal. App.2d 86, 95 [22 Cal.Rptr. 277].) ■ Neither a writ of prohibition nor a writ of mandate may be used to resolve an issue as to the admissibility of evidence. (*Bird* v. *Justice Court* (1960) 182 Cal.App.2d 674, 677 [6 Cal.Rptr. 502] [prohibition]; *People* v. *Superior Court* (1955) 137 Cal. App.2d 194 [289 P.2d 813] [mandamus]; *People* v. *Justice Court, supra*, 185 Cal.App.2d 256.) As Justice Peters has said, "It is elementary that a trial judge has the jurisdiction to decide matters before him erroneously as well as correctly.

---

[1]See generally *Lopez* v. *United States* (1963) 373 U.S. 427 [83 S.Ct. 1381, 10 L.Ed.2d 462]; *On Lee* v. *United States* (1952) 343 U.S. 747 [72 S.Ct. 967, 96 L.Ed. 1270]; *People* v. *Fontaine* (1965) 237 Cal.App.2d 320, 329-330 [46 Cal.Rptr. 855]; *People* v. *Fisher* (1962) 208 Cal.App.2d 78, 81-82 [25 Cal.Rptr. 242]; Pen. Code, § 653j; Note, *The Supreme Court, 1962 Term* (1963) 77 Harv.L.Rev. 62, 111; Note, *Electronic Eavesdropping: A New Approach* (1964) 52 Cal.L.Rev. 142; Hinerfeld, *Legal Aspects of Recording Telephone Conversations* (1965) 40 L.A. Bar Bull. 268; Tupper, *Legal Aspects of Recording Phone Conversations—A Reply* (1965) 40 L.A. Bar Bull. 377.

[2]See *infra* at pages 168-170.

That is one reason why we have appellate courts. A ruling on the admission of evidence, even if wrong, is not an abuse of discretion but simply an erroneous ruling.'' (*People* v. *Superior Court, supra,* at p. 195.)

■ Although this court may issue a writ of mandamus to enforce the right to counsel or the right to consult with counsel (see *Cornell* v. *Superior Court* (1959) 52 Cal.2d 99 [338 P.2d 447, 72 A.L.R.2d 1116]; *Vasquez* v. *District Court of Appeal* (1963) 59 Cal.2d 585 [30 Cal.Rptr. 467, 381 P.2d 203]), petitioner does not now suffer deprivation of counsel. At this juncture we are no more called upon to review the trial court's refusal to suppress petitioner's statements upon the ground that its ruling violated his constitutional right to counsel than we are required to resolve any other issue as to the admissibility of evidence.

■ Although one whose property has been illegally seized may obtain a writ of mandamus to compel the return of the property, if it is not contraband, that principle cannot serve petitioner here. (See Pen. Code, § 1540; *People* v. *Berger* (1955) 44 Cal.2d 459 [282 P.2d 509]; *Aday* v. *Superior Court* (1961) 55 Cal.2d 789 [13 Cal.Rptr. 415, 362 P.2d 47]; *Gershenhorn* v. *Superior Court* (1964) 227 Cal.App.2d 361, 364-365 [38 Cal.Rptr. 576]; Cal. Criminal Law Practice (Cont.Ed.Bar), *supra,* §§ 5.11, 5.49; Witkin, Cal. Criminal Procedure (1963) *supra,* 759.) ■ To protect a person from the deprivation of illegally seized property, which prevents him from using that property, the courts will afford a speedy determination of the legality of the seizure. (See *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, 800.) ■ Yet here, despite petitioner's possible interest in the recordings of his statements, the police did not seize possession of the tapes and the transcripts from petitioner. The police department owns the tapes and transcripts. Petitioner is not entitled to exclusive possession of such evidence. Our instant review of the trial court's ruling as to the suppression of the statements would clearly be both premature and impermissible.

II. *Discovery*

■ The trial court afforded to petitioner many of the items which he sought in his motion for pretrial discovery. The prosecution supplied the transcript of the grand jury proceedings and agreed to produce the polygraph examination questions and answers to the defense. At the hearing on

the discovery motion in the trial court, the district attorney stipulated that he would provide defense counsel with the names and addresses and the statements of witnesses whom he intended to call at the trial.

Petitioner contends that he is entitled to the names and addresses of all persons interviewed by the police regarding the charge lodged against him and to inspect all the reports, notes and records showing the results of the polygraph examination given the complaining witness. Petitioner also contends that the court should order the prosecutrix to submit to a psychiatric examination.

## A. *Statements of Witnesses*

In his motion for pretrial discovery, petitioner had requested statements of petitioner and all witnesses who had testified at the grand jury proceedings. He then requested "all reports, statements, records and interviews in writing and all notes and memoranda or oral reports, statements, records and interviews made by the police officers who investigated said case from October 5, 1964 until the present time." After the court pointed out that the district attorney had already agreed to provide petitioner with the statements of all witnesses he intended to call at trial, counsel for the petitioner stated that in making the above quoted request, "I wanted to make sure, Judge, I was asking for all possible things so it would be clear on the record."

Petitioner also requested "Any and all transcriptions of conversations or statements by the defendant, any written or typed, signed or unsigned statements of persons who may or may not be called as prosecution witnesses, and any recordings or transcriptions of statements used by the prosecution to impeach defendant witnesses as well as names and addresses of eye witnesses to the crime known to the prosecution but unknown to defendant and any notes and summaries used by police and prosecution witnesses to refresh memories before testifying at the Grand Jury proceedings." Petitioner's counsel commented on this request by stating, "We want to make sure we didn't miss anything. Then we went to signed or unsigned statements of persons who may be called as prosecution witnesses." The court then pointed out, "That is covered already."

At no time during the hearing did counsel for petitioner register any disapproval of the court's disposition of his request; nor did he ever specifically ask for the names and

addresses of persons whom the police interviewed but whom the prosecution did not intend to call as witnesses. Since petitioner did not so much as indicate that he desired the names and addresses of such nonwitnesses, he did not, of course, offer any reasons why he should obtain them.

The trial court, accordingly, properly denied petitioner's pretrial request for information beyond that already provided him. ▮ As we said in *People* v. *Cooper* (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964], "The court properly denied the blanket request that the prosecution turn over to defense counsel all the statements which it had. Although the defendant does not have to show, and indeed may be unable to show, that the evidence which he seeks to have produced would be admissible at the trial [citations], he does have to show some better cause for inspection than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." (See also *People* v. *Terry* (1962) 57 Cal.2d 538, 560 [21 Cal.Rptr. 185, 370 P.2d 985]; *People* v. *Lane* (1961) 56 Cal. 2d 773, 785-786 [16 Cal.Rptr. 801, 366 P.2d 57].)

Our position does not reflect "a swing of the pendulum" (Louisell, Modern Cal. Discovery (1963) 404) away from our fundamental concern that an accused be provided with a maximum of information that may illumine his case. (See *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1].) ▮ A defendant's motion for discovery must nevertheless describe the requested information with at least some degree of specificity and must be sustained by plausible justification. ▮ As Chief Justice Traynor has written "A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense. . . .*" (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U.L. Rev. 228, 244; italics added.) (See *People* v. *Day* (1958) 159 Cal. App.2d 572, 576 [323 P.2d 1051].) ▮ In the instant case petitioner has not met these requirements.

For the first time, and at this late point, petitioner offers his reasons for the procurement of the names and addresses of people whom the prosecution does not intend to call as witnesses. This belated rationale should have been addressed

to the trial court; we normally issue a writ of mandate only if the petitioner has unsuccessfully sought relief in the trial court. (See *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 372 [217 P.2d 951]; *Taliaferro* v. *Locke* (1960) 182 Cal. App.2d 752, 755 [6 Cal.Rptr. 813]; 1 Witkin, Cal. Procedure (1954) 579; 3 Witkin, Cal. Procedure (1954) 2535, 2537.) ▮ Accordingly, until petitioner specifically requests the trial court to order the prosecution to produce the desired information, informs the trial court of the justification for its procurement, and establishes that the trial court improperly refused such request, we shall not issue a writ of mandate. Nothing, however, precludes petitioner from hereafter urging the trial court to order a properly based discovery. (See generally Cal. Criminal Law Practice (Cont.Ed.Bar), *supra*, § 4.12; cf. *People* v. *Briggs* (1962) 58 Cal.2d 385, 410 [24 Cal.Rptr. 417, 374 P.2d 257]; *People* v. *Terry, supra*, 57 Cal.2d 538, 561; *People* v. *Gallegos* (1960) 180 Cal.App.2d 274, 277 [4 Cal.Rptr. 413]; *People* v. *Mitman* (1960) 184 Cal.App.2d 685, 691 [7 Cal.Rptr. 712].)

In view of the possibility that petitioner may renew his request for discovery of the names and addresses of non-witnesses interviewed by the police, and in order to guide the trial court in such event, we discuss petitioner's recently advanced ground for such discovery. ▮ Petitioner claims that he needs the names of these persons in order to determine "whether or not the accusatory stage had been reached at the point where the complained-of tape recordings were made." According to petitioner, if that stage had been reached, the failure of the police to advise him of his rights to counsel and to remain silent renders any evidence of his recorded statements inadmissible under *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. We point out that such justification for discovery fails because petitioner was not in custody at the time he gave such statements; the accusatory stage could not have been reached.

In *People* v. *Dorado, supra,* 62 Cal.2d 338, 353, we stated that the following three factors, which were present in the *Escobedo* case, must eventuate before the accusatory stage, or that stage when one has a constitutional right to counsel, accrues: "(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) *the suspect was in custody*, (3) the authorities had carried out a process of interrogations that

lent itself to eliciting incriminating statements. . . .''
(Italics added.)

Since an ''arrest encompasses two of the circumstances
which produced the accusatory stages in the *Escobedo* and
*Dorado* cases''—(1) the investigation is no longer a general
inquiry into an unsolved crime but has begun to focus on a
particular suspect, and (2) *the suspect is in custody*[3]—we
compressed the required factors for the accrual of the accusa-
tory stage into two. (*People* v. *Stewart* (1965) 62 Cal.2d 571,
577 [43 Cal.Rptr. 201, 400 P.2d 97].) Thus we said in *Stew-
art*, ''Whenever the two conditions are met, that is, when the
officers have arrested the suspect and the officers have under-
taken a process of interrogations that lends itself to eliciting
incriminating statements the accusatory or critical stage has
been reached and the suspect is entitled to counsel.'' (*Ibid.*)

By specifying the arrest as a requirement for the
advent of the accusatory stage, we necessarily retained cus-
tody as a requisite; an arrest includes custody. (Pen. Code,
§ 834.) At no time have we discarded custody as an essential
element of the accusatory stage. The dangers that *Escobedo*
and *Dorado* sought to deter, such as coercion, can only take
place if a suspect is in custody.

*People* v. *Furnish* (1965) 63 Cal.2d 511 [47 Cal.Rptr.
387, 407 P.2d 299], does not alter this rule; it holds that the
''formality of an arrest'' is not an inevitable ''condition
precedent to the advent of the accusatory stage'' since ''the
police could, by delaying the arrest where the situation did
not demand one, circumvent the accused's right to counsel.''
(63 Cal.2d at p. 516. We there recognized that custody
was essential to the accusatory stage but that the police,
in some cases, could physically hold a defendant in
custody without an official arrest. The police could ''detain''

---

[3] Whether there can be a prearrest ''custody'' or any form of prearrest
detention is subject to a great deal of controversy. See generally D.C.
Commissioner's Com. on Police Arrests for Interrogation, Report and
Recommendations (1962) 25-33; Note, *New York Authorizes Police to
''Stop-and-Frisk'' on Reasonable Suspicion* (1964) 78 Harv. L.Rev. 473.
In this state, courts have stated that in certain situations the police may
detain people without the probable cause necessary to legally place a
suspect under arrest. (E.g., *People* v. *Martin* (1956) 46 Cal.2d 106 [293
P.2d 52]; *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380
P.2d 658]; *People* v. *Harris* (1963) 212 Cal.App.2d 845 [28 Cal.Rptr.
458]; *People* v. *Ellsworth* (1961) 190 Cal.App.2d 844 [12 Cal.Rptr. 433];
*People* v. *Freeland* (1963) 218 Cal.App.2d 199 [32 Cal.Rptr. 132]; *Lipton*
v. *United States* (9th Cir. 1965) 348 F.2d 590.) See Note, *The Right
to Counsel During Police Interrogation: The Aftermath of Escobedo*
(1965) 53 Cal.L.Rev. 337, 359, for a discussion of the custody require-
ment in connection with *Escobedo* and *Dorado*.

a defendant without arresting him; official detention would under some circumstances play the same role as an arrest. Likewise the very recent case of *People* v. *Chaney* (1965) 63 Cal.2d 767, 769 [48 Cal.Rptr. 188, 408 P.2d 964], recognizes the requirement of the custody, stating, ''[D]efendant was not free to leave from the moment he appeared'' at the police station. (See also *People* v. *Williams* (1965) 63 Cal.2d 452, 460-461 [47 Cal.Rptr. 7, 406 P.2d 647].)

Petitioner argues that in *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], the United States Supreme Court held that the admission of defendant's statements violated his constitutional right to counsel even though the statements were elicited while he was not in custody. In *Massiah,* however, the government agent tricked the suspect into incriminating himself after he had been indicted. By then, the accusatory stage had been reached. Custody only becomes a necessary factor in the advent of the prearraignment accusatory stage.[4]

 Since petitioner was clearly not in custody at the time he uttered the incriminating statements to the victim, he cannot successfully challenge the admissibility of those statements on the basis of *Escobedo* and *Dorado.* Consequently, petitioner's invocation of possible *Escobedo* and *Dorado* issues to justify discovery in the instant case must fail.

### B. *Polygraph Examination*

 Petitioner's counsel requested ''All reports, notes and records showing the results of a polygraph (lie detector) test given [the complaining witness] . . . or to any other person relating to this case.'' Counsel stated to the trial court that he was interested in obtaining this information because the witnesses' answers to questions might be used for impeachment purposes; he offered no justification for the procurement of the results of the test. The prosecution later agreed to provide defense counsel with the polygraph questions and answers.

The trial court correctly denied defendant's request for the results of the polygraph examination. Defense counsel failed to offer any tenable reason to the trial court why he should be given the results; moreover, we cannot conceive of their pertinence to defendant's case. Not only is evidence of

---

[4]Of the more than 100 reported federal and state cases in which *Escobedo* has been considered, the Delaware Supreme Court is unable to find a single one in which the rule of *Escobedo* has been applied to a prearrest confession. (*King* v. *State* (1965) 58 Del. —— [212 A.2d 722].)

polygraph tests inadmissible,[5] but the results of the test would neither lead to any additional evidence nor aid petitioner in preparation for trial. (Compare *Walker* v. *Superior Court* (1957) 155 Cal.App.2d 134, 141 [317 P.2d 130].) Accordingly, we will not upset the trial court's disposition of this request.

■ Petitioner's untimely contention that the results of the polygraph test would be relevant in determining whether the accusatory stage had been reached at the time he gave his incriminating statements, thus entitling him to counsel, may not justify discovery. As we have pointed out *supra*, the fact that petitioner was not in custody at the time he made the recorded statements negates any possibility that the accusatory stage had been reached.

## C. *Psychiatric Examination*

Petitioner contends that the trial court should not have denied his request for an order requiring the complaining witness to undergo a psychiatric examination for the purpose of determining whether her mental or emotional condition affected her veracity. The resolution of this issue raises the dual problems of the judicial treatment of psychiatric testimony for the limited purpose of impeachment of the complaining witness in a sex violation case as well as the propriety of a psychiatric examination of such a witness.

A number of leading authorities have suggested that in a case in which a defendant faces a charge of a sex violation, the complaining witness, if her testimony is uncorroborated, should be required to submit to a psychiatric examination. (3 Wigmore, Evidence (1940) § 924a, and authorities collected therein; Report of the A.B.A. Committee on the Improvement of the Law of Evidence 1937-1938; Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach* (1960) 48 Cal.L.Rev. 648, 673; Comment, *Pre-Trial Psychiatric Examination as Proposed Means for Testing the Complainant's Competency to Allege a Sex Offense* (1957) U.Ill. L.F. 651; Note, *Psychiatric Aid on Evaluating Credibility of Rape Complainant* (1950) 26 Ind. L.J. 98.) ■ In California conviction of a sex crime may be sustained upon the uncorroborated testimony of the prosecutrix. (See, e.g.,

[5] See *People* v. *Carter* (1957) 48 Cal.2d 737, 752 [312 P.2d 665]; *People* v. *Porter* (1955) 136 Cal.App.2d 461, 470 [288 P.2d 561]. For a recent discussion of polygraph tests see Report of the President's Commission on the Assassination of President Kennedy (1964) 813 et seq.

*People* v. *Gidney* (1937) 10 Cal.2d 138, 143 [73 P.2d 1186] ; *People* v. *Murray* (1949) 91 Cal.App.2d 253, 256 [204 P.2d 624] ; 1 Witkin, Cal. Crimes (1963) 263.)

In urging psychiatric interviews for complaining witnesses in sex cases, some prominent psychiatrists have explained that a woman or a girl may falsely accuse a person of a sex crime as a result of a mental condition that transforms into fantasy a wishful biological urge. Such a charge may likewise flow from an aggressive tendency directed to the person accused or from a childish desire for notoriety. (See authorities collected in : 3 Wigmore, Evidence, *supra*, §§ 924a, 934a, 963; Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach*, *supra*, 48 Cal.L.Rev. 648, 674; Comment, *Psychiatric Evaluation of the Mentally Abnormal Witness* (1950) 59 Yale L.J. 1324, 1338; Note, *Psychiatric Impeachment in Sex Cases* (1949) 39 J. Crim. L., C. & P.S. 750; see also Overholser, The Psychiatrist and the Law (1953) 51-54; Ploscowe, Sex and the Law (1951) 187-190.)[6] Thus, Professor Wigmore, in a widely quoted passage, stated, ''No judge should ever let a sex-offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician.'' (3 Wigmore, Evidence, *supra*, 460; italics omitted.)

This concern is stimulated by the possibility that a believable complaining witness, who suffers from an emotional condition inducing her belief that she has been subjected to a sexual offense, may charge some male with that offense. Thus, the testimony of a sympathy-arousing child may lead to the conviction of an unattractive defendant, subjecting him to a lengthy prison term.

The courts in this state, however, in cases not involving sex violations, have rejected psychiatric testimony as to the mental or emotional condition of a witness for purposes of impeachment.[7] (See, e.g., *People* v. *Champion* (1924) 193

---

[6] ''*Pseudologia phantastica* is described as a medical condition involving a mixture of lies with imagination. Not infrequently, this is the basis of alleged sexual assault. Girls assert that they have been raped, sometimes recounting as true a story they have heard, falsely naming individuals or describing them.'' (1 Gray's Attorneys' Textbook of Medicine (3d ed. 1950) 940.)

[7] Such psychiatric testimony might be admissible on matters other than impeachment. For example, testimony bearing on a victim's character is admissible if the issue is consent to the sexual act. (See *People* v. *Shea* (1899) 125 Cal. 151 [57 P. 885]; *People* v. *Walker* (1957) 150 Cal.App. 2d 594 [310 P.2d 110].)

Cal. 441, 447 [225 P. 278]; *Ah Fong* v. *Earl Fruit Co.* (1896) 112 Cal. 679, 682 [45 P. 7]; *People* v. *Bell* (1955) 138 Cal. App.2d 7, 12 [291 P.2d 150]; *People* v. *Dye* (1947) 81 Cal.App.2d 952, 963 [185 P.2d 684]; *People* v. *Mackey* (1922) 58 Cal.App. 123, 127 [208 P. 135]; see generally Witkin, Cal. Evidence (1958) §§ 640-642.) ▮▮▮ Section 2051 of the Code of Civil Procedure provides that a witness may be impeached by ''contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad,'' or by evidence of conviction of a felony. Section 2052 provides that a witness may be impeached by evidence of prior inconsistent statements.

As Justice Peters has pointed out, ''The courts have frequently held that this statutory enumeration is exclusive of other methods of impeachment [citations]'' (*People* v. *Bell, supra,* at p. 12). And although California has recognized ''at least one exception, and that is that a witness may be impeached on cross-examination, in addition to the enumerated methods, by evidence that he is affected by mental disease or mental derangement that affects his powers of perception, memory or narration [citations] . . . the witness [can] be impeached . . . in this state only on cross-examination, and not by the production of other witnesses, experts or otherwise.'' (*Ibid.*) ▮▮▮ Accordingly, if the witness has been declared competent, or if no objection is urged to his competency,[8] the courts will reject expert psychiatric testimony.

▮▮▮ The proposition that a prosecution witness may be impeached only in the manner and for purposes provided in the code (see *People* v. *Champion, supra,* 193 Cal. 441, 448) does not enjoy rigid application in sex violation cases. In that area the courts have established more liberal rules of impeachment than those otherwise applicable. Thus Justice Peters, cognizant of the danger of psychotically induced charges, held in *People* v. *Hurlburt* (1958) 166 Cal.App.2d 334 [333 P.2d 82, 75 A.L.R.2d 500], that the trial court erred in a restrictive ruling on impeachment. He points out that although the general rule (Code Civ. Proc., § 2051) forbids proof of specific acts of wrongdoing for purposes of impeachment, nevertheless in a prosecution for lewd conduct with a 9-year-old girl, defendant should have been permitted to cross-

[8]The rules of competency are inadequate to exclude pathological witnesses. (Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, supra,* 48 Cal.L.Rev. 648, 650.)

examine the girl, or to introduce evidence, to show that she had made similar, but false, charges against other men. (See also *People* v. *Murphy* (1963) 59 Cal.2d 818, 831 [31 Cal. Rptr. 306, 382 P.2d 346]; *People* v. *Scholl* (1964) 225 Cal. App.2d 558, 562 [37 Cal.Rptr. 475].)

Following this trend the District Court of Appeal in *People* v. *Neely* (1964) 228 Cal.App.2d 16 [39 Cal.Rptr. 251], recently held that the defendant could properly adduce medical testimony of the mental and emotional instability of the prosecutrix in a rape case. In that case "Delores, the prosecuting witness, was a patient at Napa State Hospital" (p. 17); the sought testimony was that of a medical doctor at the hospital. The court said "While the jury had been told that Delores' general reputation for truth, honesty and integrity was bad, the appellant was also entitled to have the jury informed of the mental and emotional instability of the prosecuting witness through the expert medical testimony of the doctor in charge of her case. The jury was entitled to hear such testimony and to have it before them as an aid in evaluating her testimony." (P. 20.) The principle of the decision would obviously extend to a case in which the prosecutrix was not a patient and the expert not a doctor at her hospital.[9]

 We do not mean to suggest that psychiatric testimony of the mental and emotional condition of the prosecutrix must necessarily be admitted in every case. We recognize that psychiatric evaluation is not absolute but only relatively illuminating;[10] its utility in the ascertainment of the prose-

---

[9] Other jurisdictions permit the introduction of psychiatric testimony as to the credibility of a witness, especially in criminal sex cases. (See *United States* v. *Hiss* (1950) 88 F.Supp. 559; *United States* v. *Rosenberg* (1952) 108 F.Supp. 798, 806; *State* v. *Sinnott* (1955) 24 N.J. 408 [132 A.2d 298, 306]; *Taborsky* v. *State* (1955) 142 Conn. 619 [116 A.2d 433, 437, 49 A.L.R.2d 1238]; *State* v. *Butler* (1958) 27 N.J. 560 [143 A.2d 530, 552]; *State* v. *Klueber* (1965) —— S.D. —— [132 N.W.2d 847, 849]; McCormick on Evidence (1954) 99; Conrad, Psychiatric Lie Detection (1957) 21 F.R.D. 199; Falknor, Evidence, in 1950 Annual Survey of American Law 804; Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, supra,* 48 Cal.L.Rev. 648, 651 et seq.; Comment, *Psychiatric Evaluation of the Mentally Abnormal Witness, supra,* 59 Yale L.J. 1324, 1338-1339.)

It is noteworthy that the newly enacted Evidence Code which goes into effect in 1967 provides that, "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following. . . ." (Evid. Code, § 780.)

[10] We do not overlook Judge Jerome Frank's warning against needlessly embarking "on an amateur's voyage on the fog-enshrouded sea of

cutrix' condition must depend upon its posture in the whole picture presented to the trial court. That court can properly determine in its discretion whether psychiatric testimony as to the mental and emotional condition of the complaining witness should be admitted. We would read the *Neely* case as one in which the compelling reasons for the introduction of the testimony demonstrated the court's abuse of its discretion in rejecting it.

We turn now to the matter of an examination of the prosecutrix by the psychiatrist. Even though a psychiatrist may *testify* about the credibility of a witness in the described type of case, "most psychiatrists would say that a satisfactory opinion can only be formed after the witness has been subjected to a clinical examination." (McCormick on Evidence, *supra,* 100; see Comment, *Psychiatric Evaluation of the Mentally Abnormal Witness, supra,* 59 Yale L.J. 1324, 1339.) Thus, authorities have suggested, as does petitioner, that the prosecutrix in a sex case should always be compelled to submit to a psychiatric examination.[11] (See, e.g., 3 Wigmore, Evidence, *supra,* § 924a.) We submit however, that a general rule requiring a psychiatric examination of complaining witnesses in every sex case or, as an alternative, in any such case that rests upon the uncorroborated testimony of the complaining witness would, in many instances, not be necessary or appropriate. Moreover, victims of sex crimes might

psychiatry." (*United States* v. *Flores-Rodriquez* (1956) 237 F.2d 405, 412 [concurring opinion].) A psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify issues; the testimony may be distracting, time-consuming and costly. (See generally Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, supra,* 48 Cal.L.Rev. 648; McCormick on Evidence, *supra,* 100; Comment, *Psychiatric Evaluation of the Mentally Abnormal Witness, supra,* 59 Yale L.J. 1324.)

[11]Undoubtedly compulsory psychiatric examinations of witnesses can be authorized in certain instances. (See Code Civ. Proc., §§ 2032, 1871; *Schlagenhauf* v. *Holder* (1964) 379 U.S. 104 [85 S.Ct. 234, 13 L.Ed.2d 152].) But the only decision in a sex offense case that we could find which holds that the uncorroborated testimony of a prosecutrix does not sufficiently support guilt unless psychiatric evidence establishes her credibility (*Burton* v. *State* (1953) 232 Ind. 246 [111 N.E.2d 892]) has been overruled. (*Wedmore* v. *State* (1957) 237 Ind. 213 [143 N.E.2d 649]; see *Warren* v. *State* (1958) 238 Ind. 401 [151 N.E.2d 149]; *Lamar* v. *State* (1964) 104 Ind. 245 [195 N.E.2d 98].)

be deterred by such an absolute requirement from disclosing such offenses.

Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a compelling reason for such an examination.[12] The Supreme Court of South Dakota recently stated, "In an article entitled Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, in Vol. 48, Cal.L.Rev. 648, at page 663, this conclusion is reached: 'Most of the courts which have dealt with this problem have recognized the authority of the trial judge to order a psychiatric examination of a witness on the question of credibility. The principle established by the majority of the cases is that the judge has the *discretion* to order such an examination, although the failure to do so has rarely been held an abuse of discretion.' We are not aware of any good reason why that should not be the rule concerning complaining witnesses in sex offenses." (*State* v. *Klueber, supra,* —— S. D. —— [132 N.W.2d 847, 850]; see *People* v. *Stice* (1958) 161 Cal.App.2d 610, 613 [327 P.2d 201], *Id.,* 165 Cal.App.2d 287, 290 [331 P.2d 468]; *Carrado* v. *United States* (1953) 210 F.2d 712, 721; *State* v. *Driver* (1921) 88 W.Va. 479 [107 S.E. 189, 15 A.L.R. 917]; *Taborsky* v. *State, supra,* 142 Conn, 619 [116 A.2d 433]; *People* v. *Hudson* (1930) 341 Ill. 187 [173 N.E. 278]; *State* v. *Palmer* (1939) 206 Minn. 185 [288 N.W. 160]; *Commonwealth* v. *Kosh* (1931) 305 Pa. 146 [157 A. 479]; *Rice* v. *State* (1928) 195 Wis. 181 [217 N.W. 697]; *Gregg* v. *State* (1940) 69 Okla.Crim. 103 [101 P.2d 289]; McCormick on Evidence, *supra,* 100; Conrad, Psychiatric Lie Detection, *supra,* 21 F.R.D. 199, 209, but see *Walker* v. *Superior Court* (1957) 155 Cal.App.2d 134, 139-140 [317 P.2d 130].) [13]

We therefore believe that the trial judge should be authorized to order the prosecutrix to submit to a psychiatric examination if the circumstances indicate a necessity for an

---

[12]Since this court has developed the rules of criminal discovery in the absence of legislation (Louisell, Modern Cal. Discovery (1963) 396-397), we may allow the trial judges such authority in appropriate cases. (See *State* v. *Butler, supra,* 143 A.2d 530, 553.)

[13]Although *Burton* v. *State supra,* 232 Ind. 246 [111 N.E.2d 892], was overruled to the extent it required a psychiatric examination of an uncorroborated complaining witness in a sex case by *Wedmore* v. *State, supra,* 237 Ind. 213 [143 N.E.2d 649], we find no indication that the trial courts of Indiana may not order the examination in proper circumstances.

examination. Such necessity would generally arise only if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity. Thus, in rejecting the polar extremes of an absolute prohibition and an absolute requirement that the prosecutrix submit to a psychiatric examination, we have accepted a middle ground, placing the matter in the discretion of the trial judge.

The complaining witness should not, and realistically cannot, be forced to submit to a psychiatric examination or to cooperate with a psychiatrist. In the event that the witness thus refuses to cooperate, however, a comment on that refusal should be permitted.

In the instant case, the trial judge, in rejecting petitioner's request that the complaining witness be examined, indicated that he lacked power to make such an order. As a consequence, the judge did not exercise his discretion. Although in other situations we have ordered trial judges to exercise discretion (see, e.g., *In re Brumbach* (1956) 46 Cal.2d 810 [299 P.2d 217]; compare *Hollman* v. *Warren* (1948) 32 Cal.2d 351 [196 P.2d 562]), we see no reason to do so in the instant case; the present record does not indicate the necessity for such an examination of the prosecutrix. If, hereafter, such need should develop, the court may determine the propriety of such an order upon another request by the petitioner.

The alternative writ heretofore issued is discharged and the petition is denied.

Traynor, C. J., McComb, J., Peters, J., Peek, J., Mosk, J., and Burke, J., concurred.