Argued May 9, affirmed July 17, 1968
# WAYNE LeROY STOUT, *Appellant, v.* GLADDEN, *Respondent.*
443 P. 2d 631

*Kenneth C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. On the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*David H. Blunt,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

SLOAN, J.

In this post-conviction proceeding plaintiff challenges his prior conviction for the rape of his step-daughter. He now claims that his conviction was constitutionally defective because the district attorney suppressed evidence that would have been favorable to him. The trial court found that he had failed to sustain his burden of proof and denied the petition. We agree.

With some insignificant modification, we take the following statement of facts from plaintiff's brief:

"On February 23, 1965, petitioner was found guilty of the crime of rape of his step-daughter. The principal evidence at trial was the daughter's testimony against the petitioner's. Prior to the trial, petitioner's defense counsel, requested the deputy district attorney, to obtain a psychiatric report concerning the daughter, which the deputy district attorney agreed to do.

"Following the examination, the psychiatrist reported to the deputy district attorney that the girl was suffering from a 'mild undifferentiated schizophrenic reaction manifested by poor mental concentration and by impaired reality contact, shyness, sadness, tendency to withdraw and marked sensitiveness.'

"Several days later, when defense counsel asked the deputy district attorney for the results of the examination by the psychiatrist, the deputy re-

ported that the girl was 'all right although suffering from some sort of emotional reaction . . . and that it was the doctor's opinion that Christine, the stepdaughter, would be a competent witness and that she was telling the truth.' Defense counsel relied upon the District Attorney's narration concerning the psychiatric examination and did not request the actual report. [The doctor's report to the deputy district attorney was made orally. The only record of the report was some brief notes made by the deputy]. The post conviction court found orally that 'it's logical to say at least that any other defense attorney would have acted just as defense counsel would have done I suppose, and he didn't ask for any other report from the doctor.'

"At the petitioner's trial, his stepdaughter testified and was cross-examined by defense counsel in an attempt to impeach her credibility. At his post conviction hearing petitioner's counsel testified that had he not been mislead as to the contents of the psychiatric report by the Deputy District Attorney, he would have attempted to impeach the daughter's veracity by calling a psychiatrist to testify as to her mental condition. Also at the post conviction hearing, Dr. Norman Stewart, a psychiatrist at Eastern Oregon Hospital and Training Center in Pendleton, Oregon, testified concerning the effect of 'undifferentiated schizophrenic reaction' on the ability of an individual to tell the truth. In answer to a hypothetical question concerning this mental disease, the doctor stated that: a) such a disease could affect a person's ability to tell the truth; b) the existence of this mental disease is relevant to the determination of whether a person is telling the truth; c) a full psychiatric examination would be needed for an expert to testify whether a person with such a mental disease could state in terms of probability whether the individual had the ability to tell the truth."

Even if we take for granted that the deputy district attorney did unintentionally mislead defense counsel

and that this failure of the prosecutor did deprive the defense of an opportunity to consider if he would have called the psychiatrist as a witness, we think the failure of the prosecutor did not violate due process standards for these reasons:

■ The only record before us of what the testimony would have been that might have been offered by the examining psychiatrist was an affidavit which is attached to plaintiff's petition. Without more information we cannot tell whether his testimony would have been admissible. In *State v. Walgraeve,* 1966, 243 Or 328, 412 P2d 23, 413 P2d 609, we noted the different viewpoints expressed relative to this subject in *Ballard v. Superior Court,* 1965, 44 Cal Rptr 291, a decision by a California District Court of Appeals, and the same case when it was reversed by the Supreme Court of California, 1966, 49 Cal Rptr 302, 410 P2d 838.

■ It does appear from the affidavit that his testimony would probably have been unfavorable to defendant. *Brady v. Maryland,* 1963, 373 US 83, 83 S Ct 1194, 10 Led2d 215, states that due process is violated when evidence favorable to a defendant is suppressed.

■ The materiality of the suggested evidence was doubtful. *Brady v. Maryland, supra.*

■ The record does not persuade us that the trial and its result was caused to be unfair or prejudicial for the reasons alleged.

Affirmed.

HOLMAN, J., concurring.

A request was made of the district attorney by petitioner's counsel in his trial of conviction that the prosecuting witness be given a mental examination.

The undoubted purpose of this request, in which the district attorney acquiesced, was to determine whether her mental condition was such that she could reliably recount what had occurred.

The district attorney made pencilled notes of an oral report by the examining doctor. Some days later when the district attorney and petitioner's attorney met in a corridor of the courthouse the district attorney was asked concerning the contents of the report and replied that the prosecuting witness was being treated at the State Hospital and according to the doctor she was "all right," although suffering from some sort of an emotional reaction precipitated by the events involving the defendant, and it was the doctor's opinion that she would be a competent witness and that she was telling the truth. Petitioner now complains that he was not told, as reported by the doctor to the district attorney, that the witness suffered from a "mild, undifferentiated, schizophrenic reaction." There is no contention that the district attorney was capable of recalling, when met in the hall, the terms of a technical diagnosis or that he did other than his best to truthfully recount his present memory of what he had been told by the doctor.

The purpose of the examination was to determine the prosecuting witness's reliability concerning that which she claimed had occurred. The district attorney reported that the doctor said she was "all right," which was correct, considering the purpose for which she was examined. The examining doctor did believe she was capable of telling the truth and that she was telling it. The district attorney also disclosed that she was suffering from a mental condition. Had this not been disclosed petitioner might have a legitimate ground to complain that a full disclosure was not made to him.

However, it cannot be legitimately contended that the district attorney was guilty of suppressing evidence because he did not recount the technical terms of a mental diagnosis while passing his adversary in the corridor where he had no access to his notes. Petitioner's counsel necessarily knew the conditions under which the information was being recounted to him and that he was not getting a purported technical recapitulation of the diagnosis.

It was not shown that other than a truthful disclosure was made by the district attorney to petitioner's counsel.

O'CONNELL, J. concurs in this opinion.