[No. C001033. Third Dist. June 10, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
STEPHEN BROOME et al., Defendants and Respondents.

1480

## COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Appellant.

Glenn H. Heine, Scott Concklin and R. Mark Rose for Defendants and Respondents.

## OPINION

**SPARKS, J.**—The People appeal from an order dismissing this action for their failure to comply with a discovery order. (Pen. Code. § 1238, subd. (a)(8).) The Attorney General argues, in echo of the district attorney below, that the United States Supreme Court decision of *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674] governing traversal of search warrants under federal constitutional law somehow limits a defendant's right to discovery. The claim is that when the discovery is aimed at determining whether an affiant made misrepresentations in an application for a search warrant, a "substantial preliminary showing" of misrepresentation in the affiant's application must be made out by the defendant before discovery may be ordered. We find the argument to be untenable and hold instead that the defendants made a showing under the ordinary standards applying to discovery sufficient to entitle them to the challenged discovery order. We further hold that the superior court was within its discretion in dismissing the information as a sanction for the district attorney's willful failure to comply with the discovery order. As an equal and alternative holding, we find the *Franks* "substantial preliminary showing" standard to be satisfied as well. We thus shall affirm the judgment of dismissal.

### FACTS AND PROCEDURAL HISTORY

It is best to begin at the beginning. On May 13, 1986, Deputy Sheriff Joseph Hegseth of the Sacramento County Sheriff's Department made an

application for a search warrant of a residence in the North Highlands section of the county. "Being duly sworn," he averred the following. At some point before May 5, 1986, he was told by a confidential informant the two defendants were "dealing in crank" and had offered to sell methamphetamine to the informant. The only background information provided in the affidavit about this informant was the absence of any pending criminal charges against the informant in Sacramento County. Remuneration was provided the informant in currency not exceeding $50, so the informant was obviously not a citizen-informant. The informant took the officer to the North Highlands residence of the defendants, described their physical appearance, and said the two cars parked outside the residence belonged to the defendants. Checking with the Department of Motor Vehicles (DMV), Deputy Hegseth confirmed the vehicles belonged to the defendants and noted the physical description of the defendants in DMV files matched that given by the informant. "Between the dates of May 5, 1986 and May 10, 1986," Deputy Hegseth set up a controlled purchase with the aid of the confidential informant. The informant and the informant's vehicle were both searched. The informant was then provided with funds for the purchase of the methamphetamine. The informant arrived at the residence. "The confidential informant was observed by your affiant to exit the confidential informant's vehicle and enter the residence . . . . After a period of time, not exceeding 15 minutes, your affiant observed the confidential informant to exit the residence and leave the area . . . and subsequently meet with your affiant at a pre-determined location a short distance away from this residence."

Deputy Hegseth received a clear plastic bindle containing an off-white powder from the informant, who said it had been obtained from defendant Laurie Broome inside the residence in exchange for the funds supplied to the informant. The informant also told him Laurie Broome offered to provide the informant with additional amounts of crank at any time. A search of the informant and the informant's vehicle was negative for contraband or the funds supplied; the deputy averred the informant had not been out of his sight other than while inside the residence from the time of the first search until the time of the second search. The deputy "tested a portion of the white powder . . . with the aide [sic] of a Valtox Test Kit which indicated positive for the presence of methamphetamine."

The magistrate issued the search warrant. A search of the residence revealed numerous pieces of drug paraphernalia and a quantity of powders from different locations around the home. Following a preliminary hearing at which the powder was identified as methamphetamine in a total quantity of 1.39 grams, an information was filed charging the defendants with

possession of methamphetamine and possession of methamphetamine for sale. (Health & Saf. Code, §§ 11054, subd. (d)(2); 11377; 11378.)

The defendants were arraigned and pled not guilty. On November 10, 1986, defendant Stephen Broome moved both for disclosure of the identity of the confidential informant and for an opportunity to test the substance obtained in the controlled buy on the ground this information was material to the issue of his guilt or innocence by showing whether he had any dominion or control over the drugs at the residence. On November 14, Laurie Broome moved to traverse the search warrant, to suppress the evidence seized pursuant to the warrant, and to compel disclosure of the identity of the confidential informant because evidence material to her efforts to traverse the search warrant (through controverting Deputy Hegseth's averments) could be obtained from the informant. In support of the motion to traverse, she attached her affidavit in which she denied being home during the period in which the warrant's affidavit alleged the controlled buy took place. The same day, Stephen Broome also moved to traverse the warrant, to suppress the evidence seized pursuant to the warrant, and to compel disclosure of the identity of the informant in order to obtain the informant's testimony at the traversal hearing. In support of his motion to traverse, he relied on the affidavit of Laurie Broome, on his own affidavit similarly denying the occurrence of the controlled buy and further denying his ever having sold methamphetamine from his residence, and on testimony of Deputy Hegseth at the preliminary hearing which contradicted his averments in the affidavit (testimony which we will subsequently recount in greater detail). The People filed an opposition to the motion to disclose the identity of the informant on the ground the defendants had made an insufficient showing of need for the informant's identity.

At the hearing on December 1, 1986, Laurie Broome offered declarations from her friends and relatives accounting for her whereabouts from noon on May 5, 1986, to 7:30 a.m. on May 6, from 9 a.m. to 5:30 p.m. on May 6, from 8:30 a.m. to 8:30 p.m. on May 7, from 9 a.m. to 5 p.m. on May 8, and from 8 a.m. on May 9 to 2 a.m. on May 10. The court received these for the purpose of determining during an in camera hearing whether they contradicted the date and time the controlled buy took place (the precise details of which had been concealed for the obvious reason of protecting the identity of the informant). The motion to disclose the informant's identity was then deferred, pending the in camera hearing, to December 12. The court, however, did grant Stephen Broome's discovery motion for production of the purchased substance by December 5.

On December 8, Stephen Broome filed a motion to dismiss the information or to have his suppression motion summarily granted; the supporting

affidavit of his attorney alleged the district attorney refused to comply with the court's discovery order of December 1 and the points and authorities argued the opportunity to test the purchased powder was necessary (1) with respect to his ultimate guilt or innocence to show his dominion or control by its packaging and (2) with respect to his traversal motion to show whether a controlled buy in fact took place. In opposition, the People declared the purchased powder was not the basis for the pending charges and therefore was not relevant on the issue of guilt or innocence; they also posited for the first time their current assertion which in effect claims the showing by the defendants for discovery was insufficient to show a substantial likelihood of misrepresentation in the search warrant's affidavit.

At a hearing on the motion to dismiss held December 10, the court announced it had held the in camera hearing and had reviewed the testimony of Deputy Hegseth at the preliminary hearing. The court initially denied the motion to dismiss in order to give the district attorney time to comply with the order by supplying a testable quantity of the purchased powder to the defendants. Based on the evidence revealed at the in camera hearing, the court denied the motion for disclosure of the informant's identity for the purpose of determining Stephen Broome's ultimate guilt or innocence. The court also denied disclosure of the informant's identity for the purposes of either defendant traversing the warrant on the authority of *People* v. *Kurland* (1980) 28 Cal.3d 376, 387, footnote 5 [168 Cal.Rptr. 667, 618 P.2d 213]. The court, however, did order that the in camera transcript be made available to the judge hearing the motion to traverse. The deputy district attorney present at the hearing saw no reason why the discovery order could not be satisfied once arrangements were made.

Later that day, the People submitted a memorandum to the court issuing the discovery order announcing their intention to defy the order and seek appellate review of any resulting sanction by the court: "The People very respectfully submit that this order in effect allows defendants to traverse the search warrant without first making a substantial preliminary showing that this aspect of the affidavit is false and if so, material." Based on this memo, Stephen Broome renewed his motion for sanctions. At the hearing on the renewed sanctions motion on December 23, the court deferred a ruling on the motion pending the traversal hearing; the court stated the discovery order was relevant solely to the motion to traverse and not to any underlying issues in the case so it should be considered by the court which would be presiding over the traversal motion. On the date scheduled for the traversal motion, the People again announced their intention to refuse to comply with the discovery order compelling them to produce the substance purchased by the informant. The court, apparently reluctant to order dismissal in connection with a law and motion matter, deferred consideration of the

motion to traverse until January 30, 1987. Stephen Broome again renewed his motion for sanctions on January 15. On January 27, the court—after determining the People were prepared to accept dismissal as a sanction for refusal to comply with the discovery order—found contempt would not be an adequate remedy and thus ordered the information dismissed, exonerating the defendants' bail and vacating any pending appearances by them. The People's timely appeal followed.

## DISCUSSION

Although the People rush at full rein to the imposition of federal standards to this proceeding, it behooves us to slacken the pace and reexamine the doctrinal underpinning of both discovery and traversal motions. Thus, before we even consider the applicability—if any—of *Franks,* we consider the nature of the discovery proceeding.

■ Some 30-odd years ago, the California Supreme Court made clear that on a proper showing of materiality and relevance a defendant was entitled to compel production of evidence in the hands of the prosecution. (*People* v. *Riser* (1956) 47 Cal.2d 566, 585-586 [305 P.2d 1].) In the words of Justice Traynor, "[a]bsent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits." (*Id.,* at p. 586.) This entitlement grows out of a defendant's right to due process: "The basis for requiring pretrial production of material in the hands of the prosecution is the fundamental principle that an accused is entitled to a fair trial." (*Cash* v. *Superior Court* (1959) 53 Cal.2d 72, 75 [346 P.2d 407].) In order to ensure a defendant obtains this fair trial, a trial court has the inherent power to order discovery even in the absence of constitutional mandate or statutory authorization. (*People* v. *Memro* (1985) 38 Cal.3d 658, 677 [214 Cal.Rptr. 832, 700 P.2d 446].)

The development of discovery in criminal cases has been primarily a matter of common law evolution with little legislative action.[1] (*Hill* v.

---

[1] Some discovery is now a matter of statutory right. For example, Penal Code section 859 provides in relevant part that "[t]he prosecuting attorney shall deliver to, or make accessible for inspection and copying by, the defendant or counsel, copies of the police, arrest, and crime reports, upon the first court appearance of counsel, or upon a determination by a magistrate that the defendant can represent himself or herself." The same right is accorded a defendant in inferior courts. (Pen. Code, § 1430.) Similarly, Penal Code section 1539, subdivision (c) provides that "[u]pon a motion by a defendant pursuant to this chapter, the defend-

*Superior Court* (1974) 10 Cal.3d 812, 816, fn. 3 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820]; *Memro, supra,* 38 Cal.3d at p. 678.) The showing a defendant must make in order to compel discovery has been part of this evolution. In *People* v. *Cooper* (1960) 53 Cal.2d 755 [3 Cal.Rptr. 148, 349 P.2d 964], the defendant sought evidence from the prosecution which would impeach a witness at trial. "Although the defendant does not have to show, and indeed may be unable to show, that the evidence which he seeks to have produced would be admissible at the trial, he does have to show some better cause . . . than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." (*Id.,* at p. 770, citations omitted.) The precise nature of this "better cause" was made clearer in *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]: "A defendant's motion for discovery must nevertheless describe the requested information *with at least some degree of specificity* and must be sustained *by plausible justification.* [¶] As Chief Justice Traynor has written 'A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense. . . .' " (64 Cal.2d at p. 167, italics altered; citations deleted; accord *Hill, supra,* 10 Cal.3d at p. 817.)

■ In short, "[w]hile a mere desire by a criminal defendant to inspect all the information obtained by the People in their investigation cannot compel discovery, any information which may throw light on issues in the case should not be denied the accused. Information, to be discoverable, need not necessarily be relevant to the ultimate issue of the accused's guilt or innocence. The defendant also has the right to discovery evidence by which he may rigorously cross-examine and impeach the witnesses against him." (*People* v. *Johnson* (1974) 38 Cal.App.3d 228, 235 [113 Cal.Rptr. 303]; citations omitted.)

■ The possible adverse effects of disclosure are also to be weighed by the trial court, with an eye toward protecting against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest. (*Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 804 [91 Cal.Rptr. 594, 478 P.2d 26].) Thus, "[e]ven upon a showing of good cause, . . the right of an accused to obtain discovery is not absolute." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 538 [113 Cal.Rptr. 897, 522 P.2d 305].) Consequently, the trial court's ruling on a

---

ant shall be entitled to discover any previous application for a search warrant in the case which was refused by a magistrate for lack of probable cause."

motion for discovery is within its sound discretion (*Pitchess, supra,* 11 Cal.3d at p. 535; see also *Hill, supra,* 10 Cal.3d at pp. 817, 820 [discretion vested in trial court to determine whether to grant a motion for discovery of felony convictions in a "rap sheet" of a prosecution witness].) The exercise of that discretion of course cannot be overturned unless it is arbitrary, capricious, or patently absurd. (*People* v. *Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].)

■ Under these standards, it should be manifest the trial court was well within its discretion in ordering discovery of the purchased powdery substance. The request is certainly specific. The defendant cannot otherwise obtain an independent evaluation of the substance purchased in the controlled buy. ■ As for a plausible justification for the need for the discovery this "requisite showing may be satisfied by *general allegations* which establish some cause for discovery [other than a fishing expedition in the People's evidence].)" (*Pitchess, supra,* 11 Cal.3d at p. 537 [italics supplied].) ■ If indeed the purchased substance tested negative in a Valtox test conducted by the defendant, it would controvert the sole allegation in the affidavit which would have given probable cause to search the residence of the defendants. That the defendant might not know one way or the other how the substance will test does not detract from the plausibility of his proffered justification. ■ There is no requirement the defendant will actually find that which he hopes to find; otherwise he would be put in the catch-22 position of being required to prove that which he is attempting to prove.[2] (*Memro, supra,* 38 Cal.3d at p. 684; *Hill, supra,* 10 Cal.3d at p. 817 ["It is implicit in *Cash* v. *Superior Court, supra,* 53 Cal.2d 72, that proof of the existence of the item sought is not required"]; *People* v. *Chapman* (1959) 52 Cal.2d 95, 98 [338 P.2d 428]; cf. *Riser, supra,* 47 Cal.2d at p. 587.) ■ Finally, by ordering the defendants be provided only with a sample of the purchased substance with no clue as to its packaging, the trial court gave the prosecution every protection it needed in keeping the identity of its confidential informant secure. Hence, the ordered disclosure would not unduly hamper the prosecution or violate some other legitimate governmental interest. Thus, under traditional discovery principles, the trial court properly ordered the People to produce a sample of the substance purchased in the controlled buy. With this right unquestionably established, we

---

[2] "There was only one catch and that was Catch-22, which specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. Orr would be crazy to fly more missions and sane if he didn't, but if he was sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to. Yossarian was moved very deeply by the absolute simplicity of this clause of Catch-22 and let out a respectful whistle." (Heller, Catch-22 (1955) p. 47.)

must now attempt to discern the connection the People posit between these principles and those governing search warrant traversal.

Hoping to keep additional background brief, we note succinctly that the California Supreme Court in *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234] confirmed a defendant was authorized under Penal Code sections 1538.5, 1539, and 1540 to traverse a search warrant through a challenge to the factual veracity of the affidavit supporting the warrant. (*Id.,* at pp. 90, 95.) At the hearing on this statutory motion, the defendant bore the initial burden of demonstrating a prima facie case of material inaccuracy in the affidavit. (*Id.,* at p. 102.) If an inaccuracy ultimately were shown to exist and the affiant was negligent in presenting it, the inaccuracy was to be corrected and the affidavit retested for probable cause. (*Id.,* at pp. 100-101 & fn. 14.) If the officer recklessly or intentionally created the inaccuracy, the warrant was to be quashed and the evidence obtained thereby suppressed. (*People* v. *Kurland, supra,* 28 Cal.3d at pp. 383-384; *People* v. *Cook* (1978) 22 Cal.3d 67, 75, 87, 90 [148 Cal.Rptr. 605, 583 P.2d 130].)

In the meantime, the United States Supreme Court in *Franks* v. *Delaware, supra,* 438 U.S. 154, held that the Fourth Amendment imposes no sanctions for negligent misstatements and compels mere excision of those that are intentional or reckless. In *Franks,* the United States Supreme Court was confronted with a situation in which a defendant was accorded no statutory or common law right to traverse a search warrant by challenging the affidavit. (438 U.S. at p. 155 [57 L.Ed.2d at p. 672].) In light of a number of important considerations, the court announced a rule of "limited scope, both in regard to when *exclusion* of the seized evidence is mandated and when a *hearing . . .* must be accorded." (438 U.S. at p. 167 [57 L.Ed.2d at p. 679], italics supplied.) The court held that "where the defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." (*Id.,* at pp. 155-156 [57 L.Ed.2d at p. 672], italics supplied.)

Because of this conflict between the procedures and remedies accorded a criminal defendant under the state search and seizure clause and those

afforded under the Fourth Amendment, the California Supreme Court thereafter relied solely on California law in holding that deliberate or reckless misstatements compel automatic quashing of the warrant. (*People* v. *Kurland, supra,* 28 Cal.3d at p. 383, fn. 2.) ■ All that came to a stop in 1982 when the People passed Proposition 8, an initiative measure which added article I, section 28, subdivision (d) to the California Constitution. The effect of this enactment has been to eliminate the judicially created remedy of exclusion of evidence as a penalty for illegal action except where mandated by the federal Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].) Thus, even if affiants run afoul of *Kurland, Cook* and *Theodor,* there is no remedy for mere negligence, and the remedy for perjury or reckless indifference is to correct the misinformation and retest the warrant—the warrant is no longer peremptorily quashed.

■ Having set the legal scene, we find absolutely no basis for the People's telescoped analysis which concludes the *Franks* standard of a "preliminary substantial showing" must be grafted on the California law of discovery. They blithely state the trial court erred by treating "the production of evidence request as though it had been made in the context of routine discovery and not in the attacking-the-warrant context" without ever presenting the lynchpin which would keep the logical wheels on the axles of their argument. The missing pin is the reason why discovery should be treated differently in one context than the other. Certainly federal law now governs the level of deception California courts must tolerate before they ultimately may quash a warrant and suppress its fruits. But it does not follow that our courts are compelled to adopt the federal threshold for invoking the statutory traversal hearing. After all, our hearing is authorized by statute[3] and the *Franks* rule was announced in the context of the Fourth Amendment. Nevertheless, whether we are so compelled or not is of little moment because we see no real difference in permitting a defendant a hearing as a matter of statutory right at which he must make his prima facie showing or in forcing the defendant to make his prima facie showing first to obtain the hearing. But in any event, the claimed federal nature of the ultimate hearing at which federal standards are to be imposed does not snake its way upstream vacating every state procedural provision not present in federal law which might be responsible for exclusion of evidence when considered in a "but/for" context. Discovery is a collateral matter by

[3] Penal Code section 1538.5, subdivision (a) permits a defendant to "move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds: [¶] . . . (2) The search or seizure with a warrant was unreasonable because . . . (iii) there was not probable cause for the issuance of the warrant; . . . (v) there was any other violation of federal or state constitutional standards."

which a defendant gathers facts. Federal standards no more override a trial court's authority to order discovery or to order sanctions for noncompliance—because this might result in the exclusion of evidence which federal law might not exclude[4]—than they override Penal Code sections 859b or 1387 (which compel dismissal for an untimely preliminary hearing or bar prosecution after two dismissals, respectively) even though those sections certainly result, ultimately, in the exclusion of relevant evidence. Proposition 8, it must be recalled, did not adopt the Federal Rules of Criminal Procedure, the United States Codes, or the federal common law. Consequently, our criminal courts did not become federalized by its enactment. With exceptions not pertinent here, Proposition 8 merely mandates that "relevant evidence shall not be excluded in any criminal proceeding, including pretrial . . . . hearings . . . ." (Cal. Const., art. I, § 28, subd. (d).) This simply means that if relevant evidence is proffered at a criminal proceeding it can be excluded only if its admission would violate the federal Constitution. "What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*In re Lance W., supra,* 37 Cal.3d at pp. 886-887; italics in original.)

It is true that "[i]mplicit in the limitation on the court's power to exclude relevant evidence to the enumerated statutory exceptions is a limitation on the power of the court to create nonstatutory exclusionary rules, whether denominated rules of procedure, rules of evidence, or substantive rules, for the exclusion of unlawfully seized evidence if those rules afford greater protection to a criminal defendant than does the Fourth Amendment." (*Id.,* at pp. 888-889; fn. omitted.) But the limitation only applies to exclusionary rules—rules which exclude relevant evidence from admission. It does not mean that accusatory pleadings can no longer be dismissed for reasons unconnected with the admission of evidence. Thus, it does not mean, for example, that an information can no longer be dismissed when the state statute of limitations has run, or because too many earlier dismissals have been incurred, or because the prosecution has wilfully disobeyed a lawful order of the court to defendant's prejudice, or for any other substantive or procedural defect for which state law mandates dismissal when that dismissal is not compelled by an exclusionary rule of an evidentiary nature.

The central issue in *Franks* was whether a defendant, under any circumstances, had a right under the Fourth Amendment to challenge the truthfulness of factual statements made in an affidavit supporting a search

---

[4] We make no assumptions about federal criminal discovery as to whether it would compel production of the evidence in question in this case.

warrant. The high court found such a right in limited circumstances. As one court put it, "[t]o rule otherwise would permit the police in every case to exaggerate or to expand on the facts given to the magistrate merely for the purpose of meeting the probable cause requirement, thus precluding a detached and objective determination." (*Commonwealth* v. *D'Angelo* (1970) 437 Pa. 331 [263 A.2d 441, 444], quoted in 2 LaFave, Search and Seizure (2d ed. 1987) Facially-Sufficient Affidavit, § 4.4(a), p. 187.) But it must be recalled that this right flows from the Fourth Amendment's prohibition against unreasonable searches and seizures and its injunction that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, . . ." (U.S. Const., 4th Amend.) It is a right, then, accorded to the accused, not the state. The Fourth Amendment, needless to say, does not prohibit states from granting hearings or discovery rights to defendants. Instead, as construed by the *Franks* court, it simply compels an evidentiary hearing on the veracity of the search warrant affidavit when the necessary threshold showing has been made by the accused.

■ As we have recited, in order to be entitled to an evidentiary hearing under the Fourth Amendment there "must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing." (*Franks,* 438 U.S. at pp. 171-172 [57 L.Ed.2d at p. 682]; fn. omitted.)

■ There is nothing in *Franks* itself which would indicate the holding is to be applied as a threshold to obtaining discovery. The court indicated its requirement of a substantial preliminary showing would work to prevent "new large-scale commitment[s] of judicial resources" and "should suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." (438 U.S. at p. 170 [57 L.Ed.2d at p. 681].) The high court went on to reiterate that the showing sufficient to trigger the evidentiary hearing "must be more than conclusory and must be supported by more than a mere desire to cross examine." (*Id.*, at p. 171 [57 L.Ed.2d at p. 682].) The court thus was concerned about preventing traversals used for general discovery, not limiting discovery for the purpose of gathering facts for an initial traversal showing. Nor do we think the United States Supreme Court

could have intended a result which would make this announced right unobtainable. As the People would have it, the catch-22 predicament we previously recounted would apply here to defeat any effort by the defendant to obtain a hearing, since he could rarely make anything other than a conclusory statement about inaccuracies in the affidavit (and thus never be entitled to a hearing) if he is not allowed access to matters within the prosecution's control without more than a necessarily conclusory statement as to his need for the data.

In short, as the memorandum submitted below by the district attorney makes clear, the People make the error of categorically equating discovery with the ultimate traversal of the warrant. ██ ██ ██ ██ From this faulty premise, they conclude that discovery must be as restricted as the traversal.[5] But discovery is not a traversal. Discovery of unprivileged information is simply a fact-gathering enterprise which actually furthers the purpose of *Franks* as it may demonstrate to a defendant there is no purpose in attempting to traverse the warrant.

The People's sole authority to the contrary is unpersuasive. In *People* v. *Crabb* (1987) 191 Cal.App.3d 390 [236 Cal.Rptr. 385], the defendant was convicted of possession of cocaine for sale after evidence of his guilt was obtained by a search warrant authorizing the search of his home. Defendant had been permitted to cross-examine the affiant during the preliminary hearing, eliciting the information that one informant had pending criminal charges and was a drug user, another informant was an occasional drug user, and a third informant was a user of the drugs purchased from the defendant. (*Id.,* at p. 392.) He then propounded a discovery request in the superior court seeking the criminal records of the confidential informants for the previous five years, records of any payments made to the informants, and the records of all information provided by the informants (with specific particulars as to the case numbers, search warrants, and arrests based on this information for the previous five years). (*Id.,* at pp. 392-393.) The trial court denied the discovery motion, the defendant withdrew his motion to traverse, and he was convicted on a slow plea. (*Id.,* at p. 393.) The sole issue on appeal was whether the trial court erroneously denied defendant's request for discovery of information contained in police records. The *Crabb* court affirmed, holding that discovery for purposes of traversing a search

---

[5] Another concept improperly admixed into the People's argument is the idea the defendant's inability to discover the identity of a confidential informant somehow stems from an application of *Franks* standards to discovery. Not so. The privilege against disclosing an informant is of independent origin (*McCray* v. *Illinois* (1967) 386 U.S. 300, 312 [18 L.Ed.2d 62, 71, 87 S.Ct. 1056]), which *Franks* itself recognizes might not be defeated even in the ultimate traversal hearing. (438 U.S. at p. 170 [57 L.Ed.2d at p. 681].) Thus, a fortiori, it is not *Franks* which keeps confidential the identity of an informant from any discovery motion geared toward a motion to traverse. (*Kurland, supra,* 28 Cal.3d at p. 387, fn. 5.)

warrant is not permissible if the defendant is not in possession of evidence of misstatements or omissions sufficient to trigger a right to an evidentiary hearing under *Franks*. (*Crabb, supra*, 191 Cal.App.3d at pp. 394-395.) The entire tenor of the court's analysis is identical to that propounded here by the People—the "essential rationale" of *Franks* should apply to discovery. We have already explained at length our reasons for respectfully disagreeing with this crabbed view of a defendant's discovery rights, reasons which now lead us to part company from *Crabb*.[6]

The conclusion we reach here was recently foreshadowed by the Court of Appeal for the First District in *People* v. *Luttenberger* (1988) 200 Cal.App.3d 1258 [248 Cal.Rptr. 20]. There the question was whether discovery relating to the reliability of a confidential informant used to obtain a search warrant contravened either Proposition 8 or the federal standard for challenging a search warrant affidavit under *Franks*. The *Luttenberger* court held that the challenged discovery order did neither. "*Franks* said nothing about the right to discover evidence essential to the 'substantial preliminary showing' required for an evidentiary hearing on the validity of a search warrant affidavit." (*Id.,* at p. 1261.) California decisional law, the court went on, "simply mandates a discovery procedure. Federal law governs the determination whether that discovery procedure has produced a 'substantial preliminary showing' for an evidentiary hearing under *Franks,* as well as the ultimate question whether the evidence should be suppressed. Discovery under [California decisional law] can only benefit the defendant by leading to the exclusion of evidence under federal law, and Proposition 8 is not violated by such exclusion." (*Ibid.*; citations omitted.) Given this analysis, the *Luttenberger* court predictably also rejected the decision of the *Crabb* court on the ground that it was "incorrectly decided." (*Ibid.*) The court further rejected the argument that Proposition 8 barred the discovery procedure because it was not compelled by federal law. Proposition 8, the court declared, "did not preclude California courts from prescribing supplementary procedures for application of the federal standards of admissibility." (*Id.*, at pp. 1261-1262.) We join with the *Luttenberger* court in holding that nothing in *Franks* or Proposition 8 contravenes the defendant's right to discovery under California law.

Although we are firmly of the opinion *Franks* has no application to the showing necessary to compel discovery, we also reach the question of the sufficiency of the defendants' showing even under *Franks*. Obviously the

---

[6]Not that we disagree with *Crabb's* result. The affidavit already contained information regarding the drug use and prior informant status of the informants. (*Crabb, supra,* 191 Cal.App.3d at p. 395.) Consequently, defendant's discovery request merely sought cumulative data; thus the denial by the trial court was well within its discretion in resolving the showing of plausible justification for the discovery.

*Franks* paradigm must be adjusted somewhat, since the context is not probable cause for the warrant but is instead whether there are grounds to order discovery to determine if a fact was misrepresented. Thus the substantial preliminary showing must be of possible misrepresentations of a fact which in turn must be material in that its correction would negate probable cause for the warrant. Since we are thus one step removed in this context from determining whether the misrepresentation actually affects probable cause, and are instead merely concerned with showing the possibility of error in a representation, the state of mind of the affiant in making mistakes in other representations (which a defendant would include in his showing for discovery) would be irrelevant. Once the discovery with respect to the questioned representation has been completed, *then* the standard *Franks* concern with the state of mind of the affiant as to that misrepresentation comes into play. Therefore, the People's arguments with respect to Deputy Hegseth's level of culpability for the errors included in the defendant's showing are beside the point. Otherwise, since the state of mind for an affiant is generally determinable only at an evidentiary hearing (cf. *United States* v. *Stanert* (9th Cir. 1985) 762 F.2d 775, 781 [affiant's state of mind in the showing for a traversal motion only determinable at traversal hearing]), we would wind up with an evidentiary hearing to determine if discovery is to be ordered to determine if a traversal hearing should be held to determine an affiant's state of mind. "O! In that way madness lies; let me shun that." (*King Lear,* act III, scene iv, line 21.)

At the preliminary hearing, Deputy Hegseth admitted that contrary to his averments, he did not actually see the informant go through the door of the residence. As he drove past, the informant walked up to the door, reaching it at a point when the deputy's car already had reached the end of the property. The deputy testified he drove five or ten houses further and turned around. The informant, who had been out of his sight for 20 to 40 seconds, was no longer at the door. He additionally testified he then drove about five or ten houses past the residence in question the other direction and parked; after about fifteen minutes, he did not actually see the informant leave the front door of the residence but instead saw the informant as the informant became visible (to the deputy several houses to the south) in the area of the garage of the residence. Deputy Hegseth testified he concluded the informant must have gone into the house because he had not noticed any place the informant could have hidden outside.

Although the People argue otherwise, these contradictions between the affidavit and the preliminary hearing testimony do provide a portion of the substantial preliminary showing that other facts might be misrepresented. It is one thing to represent to a magistrate the informant was always in sight from the time of the pretransaction search to the posttransaction search

except while the informant was inside the residence; the magistrate could scarce come to any conclusion other than that the substance was obtained inside the residence, with the defendants the likely suppliers. But where it was the affiant's inference the informant must have gone inside the residence, it does not matter how "commonsense" or "obvious" the inference may be—the whole point of the review by the magistrate of the facts assembled by the affiant is for the magistrate to determine if the inference is obvious or commonsense in the determination of probable cause, not the affiant. (*United States* v. *Davis* (9th Cir. 1983) 714 F.2d 896, 899 [officer misrepresented observations of underling as his own; "The fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error"].) It might be Deputy Hegseth was reasonable in light of the topography, but at least to some extent this indicates an examination of other conclusions is warranted.

If, however, there remained any doubt about the sufficiency of the showing in favor of discovery, it is resolved by the remainder of the defendants' proffer. The affidavits of the defendants that the controlled buy never happened, while highly suspect, are not incompetent evidence such that if a lower court explicitly credited them we could say they are insufficient evidence. The People argued below the affidavits should be rejected on this basis; we must assume the trial court resolved the question against them. As for the affidavits of the friend and relatives of Laurie Broome, they accounted for almost all her time during the period in which the affiant averred the controlled buy took place. This naturally does not foreclose the controlled buy taking place as averred, but it is as substantial a showing as can be expected when the defendants are in the dark as to when precisely the buy was to have taken place. Based in part on evidence at the in camera hearing, the trial court apparently found these affidavits provided a showing of possible misrepresentation. We have not been provided a copy of the transcript of this hearing; as it is the People's burden on appeal to affirmatively demonstrate error, we must presume the trial court acted properly in so finding. (*People* v. *Garcia* (1987) 195 Cal.App.3d 191, 198 [240 Cal.Rptr. 703].) Combined, there thus was a sufficiently substantial preliminary showing there might be misrepresentation in the averral the substance tested positive for methamphetamine. As the presence of the methamphetamine was the sole fact providing probable cause in the affidavit, the trial court properly ordered discovery of the purchased substance.

██ This leaves the question of the propriety of the sanction. In part because the People invited this sanction to test the legal issue, and in part because contempt otherwise would not have protected the defendants' due process rights to the information, the trial court was correct in dismissing the information. (*Dell M.* v. *Superior Court* (1977) 70 Cal.App.3d 782, 786

[144 Cal.Rptr. 418]; 2 Witkin, Cal. Evidence (3d ed. 1986) Discovery and Production of Evidence, § 1665, p. 1608.)

The judgment is affirmed.

Carr, Acting P. J., and Marler, J., concurred.