Filed 6/25/14  K.B. v. G.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| K. B., | C072289 |
| Respondent, | (Super. Ct. No. 11FL03552) |
| v. | |
| G. B., | |
| Appellant. | |

As part of its judgment in this parentage action, the trial court determined (among other things) that if G. B., the birth mother to twins P. and P., moves to Idaho, the twins' other mother, K. B., should have primary physical custody of the children.  On appeal, G. B. contends the trial court improperly based its custody decision on G. B.'s genuine belief (prior to the court's parentage decision) that K. B. was not a legal parent to the twins and on G. B.'s legitimate opposition to the parentage action.  G. B. also contends the trial court failed to consider all of the relevant factors governing the custody determination because the court did not address the detriment to the twins if G. B. moves

1

to Idaho without them and instead focused exclusively (and improperly) on the impact the move would have on K. B.'s relationship with the twins if they were to go with G. B. Finally, G. B. contends the trial court's finding that she would frustrate K. B.'s relationship with the twins is not supported by substantial evidence.

Finding no merit in any of these arguments, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

G. B. and K. B. began dating in the spring of 2008 and by the fall were in an exclusive relationship with each other, although they never lived together. In 2009, they agreed to do a "shared IVF [in vitro fertilization] cycle," in which both of them would be implanted with embryos produced with donor eggs fertilized by donor sperm. G. B. went first. Two embryos were implanted in her in June 2009, and in July she learned she was pregnant with twins. As a result, K. B. ultimately changed her mind about undergoing implantation because she wanted only two children.

The twins, P. and P., were born in February 2010. Both women were involved in caring for them following their birth, but G. B. was always present.

In October 2010, G. B. ended the couple's relationship. Although K. B. no longer stayed overnight at G. B.'s home following their break up, she did continue seeing the twins daily. In January 2011, G. B. asked K. B. to stop her daily morning visits, and in March she discouraged K. B. from visiting in the evenings. At that time, K. B.'s visits occurred primarily on weekends, with visits also on Tuesdays and Thursdays.

In June 2011, K. B. commenced this parentage action. By that time, her visits with the twins were of limited duration, from minutes up to an hour. When G. B. was served with the petition, she ceased K. B.'s parenting time altogether. At K. B.'s request, the court ordered the parties to private mediation. At the first mediation appointment on June 29, 2011, G. B. told the mediator that she wanted to move to Idaho with the twins.

In August 2011, the court ordered an interim parenting plan. In October 2011, the mediator issued her report recommending that if G. B. moved to Idaho, K. B. should have

2

primary custody of the twins. The mediator's recommendation was based on her conclusion that "it would be more detrimental to the children to move to Idaho with [G. B.] than it would to stay in Sacramento with [K. B.] given the number of adjustments they would have to make and the loss of their other parent and their familiar surroundings."

With a hearing set for late November, K. B. filed a declaration asking the court to adopt the mediator's recommendation. She also asked the court to order the parties to participate in some type of counseling designed to help eliminate conflict in the presence of the children and to improve communication, or to order that the custody exchanges be supervised, because G. B. was engaging in conduct at the exchanges that was aimed at undermining K. B.'s relationship with the twins. The court ordered monitored exchanges and set the case for trial in March 2012. The trial was later moved to May.

In March 2012, G. B. filed an ex parte motion to curtail K. B.'s parenting time based on allegations that K. B. was abusing the twins. Child Protective Services investigated and determined that the allegations of general neglect were unfounded.

The case was ultimately tried over five days between May 3 and June 21, 2012. On July 5, the court issued a 50-page tentative decision, which was to become the court's statement of decision unless either party specified further controverted issues or made proposals not covered in the tentative decision within 10 days. As pertinent here, the court determined that K. B. was a presumed parent to the twins and G. B. had not rebutted the presumption. The court then determined that the parties should share physical custody of the twins, but if G. B. moved to Idaho, K. B. should have primary physical custody. Among other things, the court found that while K. B.'s bonds with the twins did not "measure to the same extent" as G. B.'s bonds with them, G. B. was "the parent more likely to frustrate, impede, or impair [the other parent's] parenting time," without therapy and counseling, G. B. would "engage in continuing and future behaviors that will frustrate" "[c]o-parenting collaboration in the joint care and supervision of the

3

twins" and K. B.'s "interaction with the twins," and "were [G. B.] to depart with the parenting plan she proposes . . . , the children's relationship [with K. B.] would . . . wither and die."[1]

G. B. filed an "objection" to the tentative decision, asserting that because the court had found that she had a stronger bond with the twins, the court should allow her to move with the children and "fashion a plan that would allow for 'frequent and continuing contact' with" K. B. G. B. also argued that there was no evidence that she was not likely to allow K. B. frequent and continuing contact with the twins once she moved with them to Idaho.

The court entered its statement of decision, substantially adhering to its tentative decision, on July 17, 2012, then entered judgment on August 27. G. B. filed a timely appeal.

DISCUSSION

I

*Basic Custody Principles*

"In an initial custody determination, the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. (b).) It must look to *all the circumstances* bearing on the best interest of the minor child." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32.) "In making an order granting custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child frequent and continuing contact with the

---

[1]      The mediator testified that G. B. was not "able to offer a concrete [parenting] plan" if the twins moved with her to Idaho. "She stated that she didn't think it was healthy for the children to travel very much or to be on an airplane. She stated that she could send photos and possibly Skype, and thought that if [K. B.] were able to come to Idaho for a long weekend, but she did not feel that the children should be separated from her for more than three nights."

noncustodial parent, consistent with [the best interest of the child]." (Fam. Code, § 3040, subd. (a)(1).)

Where one parent proposes to move with the children, and custody must be determined in the event the move is completed, relevant factors include "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1101 (*LaMusga*).)

A proposed move that will cause detriment to the relationship between the children and the noncustodial parent does not necessarily mandate a change in custody, "[b]ut it is within the wide discretion of the superior court to order a change of custody based upon such detriment, if such a change is in the best interests of the children in light of all the relevant factors." (*LaMusga*, *supra*, 32 Cal.4th at p. 1095.) "The weight to be accorded to such factors must be left to the court's sound discretion." (*Id.* at p. 1093.)

II

*The Trial Court Did Not Improperly Base Its Custody Determination*
*On G. B.'s Sincere Belief That K. B. Was Not A Legal Parent To The Twins Or*
*On G. B.'s Legitimate Opposition To The Parentage Action*

On appeal, G. B. first contends the trial court improperly "faulted her for her belief that [K. B.] was not a legal parent to the twins." Stated another way, G. B. contends the court abused its discretion by "denying her move-away request" to "punish" her for her decision "to contest parentage." We find no merit in these contentions.

5

G. B.'s argument is based on the trial court's findings that she "truly believed she was protecting her children" by opposing the parentage petition, that she had "a reasonable basis in fact" for her opposition to the petition, that her "persistence and parental protectiveness rest[ed] on a genuine belief that she ha[d] been the twins' exclusive parent," and that she could not "be entirely faulted" for "jealously--but maternally--protect[ing] her children and her interest in her children" "until a determination of parentage." In effect, as G. B. sees it, the trial court found that up until the court decided the parentage issue, G. B. sincerely and reasonably believed that K. B. had no parental rights with respect to the twins, and G. B.'s opposition to the parentage action was based on that sincere and reasonable belief. From this premise, G. B. argues that the trial court "punishe[d]" her for her belief by using her belief -- and her resulting opposition to the parentage action -- as a basis for ruling that K. B. should have primary custody of the twins if G. B. moved to Idaho.

To the extent G. B.'s argument rests on the bare premise that the trial court ruled against her because she believed that K. B. was not a parent to the twins and because of her opposition to the parentage action, we reject that premise. G. B. points to nothing in the court's decision that shows the court ruled against her just because of her belief about K.B's legal rights or just because she opposed the parentage action. Rather, in ruling that K. B. should have primary custody of the twins if G. B. moved to Idaho, the trial court's primary focus was on its findings: (1) that G. B. was "the parent more likely to frustrate, impede, or impair [the other parent's] parenting time"; (2) that without therapy and counseling, G. B. would "engage in continuing and future behaviors that will frustrate" "[c]o-parenting collaboration in the joint care and supervision of the twins" and K. B.'s "interaction with the twins"; and (3) that "were [G. B.] to depart with the parenting plan she proposes . . . , the children's relationship [with K. B.] would . . . wither and die." Nothing in the court's decision shows that these findings rested on G. B.'s belief that K. B. was not legally a parent to the twins or on G. B.'s opposition to the parentage

6

action.  Certainly G. B. has not shown that the trial court's findings in these regards were intended to serve as proxies for G. B.'s belief that K. B. was not a legal parent to the twins and/or G. B.'s opposition to the parentage action.

To the extent G. B.'s argument implies something more, i.e., that the trial court improperly ruled against her because of her *actions* and/or her *attitude* toward K. B., both of which were, in turn, *motivated* by her sincere and reasonable belief that K. B. was not a parent to the twins -- we reject that argument also.  We acknowledge that a parent in G. B.'s position faces something of a Catch-22.  (See *People v. Broome* (1988) 201 Cal.App.3d 1479, 1489, fn. 2 [quoting Joseph Heller's novel of the same name].)  On the one hand, if parent A treats the other party as though she, too, is a parent to the children, even though parent A sincerely and reasonably believes otherwise, parent A must face the possibility that her actions will be used against her to establish that the other party *is* a legal parent to the children.  On the other hand, if parent A acts consistently with her sincere and reasonable belief that the other party is *not* a parent to the children, then parent A must face the possibility that the court will determine that the other party *is* a parent anyway and that her actions will then be used against her in determining what custody arrangement is in the best interest of the children.

While this quandary is real, it cannot be used to limit the trial court's ability to fully consider all evidence of what custodial arrangement is in the best interest of the children pursuant to the Family Code.  (See Fam. Code, §§ 3011, 3020, 3040.)  Yet that is essentially what accepting G. B.'s argument would do here.  In essence, G. B. (at least arguably) would have us hold that in making its custody determination the trial court could not lawfully consider any attitude or actions on her part that were motivated by her sincere and reasonable belief that K. B. was not legally a parent to the twins.  In making a custody determination, however, the court "must look to *all the circumstances* bearing on the best interest of the minor child" (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at pp. 31-32) and in particular must consider "which parent is more likely to allow the child

7

frequent and continuing contact with the noncustodial parent" (Fam. Code, § 3040, subd. (a)(1)). How the parents behave toward each other is obviously critical in determining which parent is more likely to allow the children frequent and continuing contact with the other parent. (See *LaMusga*, *supra*, 32 Cal.4th at p. 1094 ["Clearly, the court must consider the past conduct of the parents in fashioning a custody order that serves the best interests of the children"].) Thus, to preclude a trial court from considering one parent's attitude or behavior toward the other parent just because the first parent's attitude or behavior was motivated by a sincere and reasonable belief that the second party was not actually a parent to the children would necessarily prevent the court from considering evidence that could be critical to a determination the court is required to make. We cannot do that.

Because the discretion to determine what custodial arrangements are in the best interest of the children rests with the trial court, it is up to the trial court to determine what to make of one parent's actions and attitudes toward the other parent. Certainly it could be reasonable in a given case for a trial court, in determining how one parent is likely to act toward the other parent in the future, to discount the significance of a past attitude or action that arose from a sincere and reasonable belief that the other parent was not, in fact, legally a parent to the child. In such a case, for instance, the trial court might reasonably determine that a parent who initially was uncooperative with the other party's assumption of parental duties based on a sincere and reasonable belief that the other party was not legally a parent to the child would be able to shed that attitude and fully cooperate with shared parenting following the court's determination that the other party *was* a legal parent. On the other hand, depending on all of the facts and circumstances presented, it could also be reasonable for a trial court *not* to discount the significance of an attitude or action that arose from a sincere and reasonable belief that the other party was not legally a parent. For example, in such a case the court might determine based on

8

all of the evidence before it that the noncooperative parent would likely be unable to shed her noncooperative attitude despite the court's determination of parentage.

In either case, it is for the trial court to decide what significance parental conduct and attitudes have to the determination of what custodial arrangement will be in the best interest of the child. The rule that G. B. arguably would have us impose here -- that a trial court determining custody of a child can never consider parental attitudes or conduct that are premised on a sincere and reasonable belief that the other party is not legally a parent -- is contrary to the provisions of the Family Code and thus is beyond our power to create or sanction. The trial court must look to all the circumstances bearing on the best interest of the child, and the trial court here, by considering G. B.'s attitude and actions toward K. B., even though they might have arisen from a sincere and reasonable belief that K. B. was not legally a parent to the twins, did exactly what it was required to do. No error has been shown.

III

*The Trial Court Properly Considered*

*All Relevant Factors In Making Its Custody Determination*

G. B. next argues that the trial court "failed to consider or address all relevant move-away factors" because the court did not address "the probable detriment to the children when [G. B.] moves to Idaho and [K. B.] takes primary custody." Instead, according to G. B., "the court focused on only one factor:  the twin's relationship with [K. B.]," which was an abuse of discretion. We disagree.

Proper resolution of this issue requires an understanding of what a party must do to avoid a reviewing court drawing inferences in favor of the trial court's decision, so we begin with that subject. The foundational principle is this:  "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) That means, for example, that if the record is silent or, if not entirely silent,

9

at least ambiguous as to whether the court considered a particular issue or as to how the court resolved a particular issue, a reviewing court will normally assume that the court *did* consider the issue and, in fact, resolved it in a manner consistent with the result in the judgment. "When what occurred is conclusively established by the record, the contrary cannot be presumed. . . . [But] where the record is silent as to what was done it will be presumed that what ought to have been done was not only done but rightly done." (*Steuri v. Junkin* (1938) 27 Cal.App.2d 758, 760.)

"[T]he means by which to avoid application of these inferences in favor of the judgment" can be found in Code of Civil Procedure[2] sections 632 and 634 (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at p. 1133), as well as in rule 3.1590 of the California Rules of Court.[3] The process begins with the tentative decision. "On the trial of a question of fact by the court, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk." (Rule 3.1590(a).) Following the announcement of the tentative decision, a party may request that the court issue "a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." (§ 632; see also rule 3.1590(d).) "The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested the statement, any party may make proposals as to the content of the statement of decision." (§ 632; see also rule 3.1590(d)-(e).)

Alternatively, "[t]he court in its tentative decision may: [¶] (1) State that it is the court's proposed statement of decision, subject to a party's objection under (g); [¶] (2) Indicate that the court will prepare a statement of decision; [¶] (3) Order a party to

---

[2]      All further section references are to the Code of Civil Procedure.

[3]      All further rule references are to the California Rules of Court.

10

prepare a statement of decision; or [¶] (4) Direct that the tentative decision will become the statement of decision unless, within 10 days after announcement or service of the tentative decision, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision." (Rule 3.1590(c).)

Here, the trial court issued a written tentative decision that specified that it would be the court's statement of decision unless within 10 days either party "file[d] and serve[d] a document that specifie[d] controverted issues or ma[de] proposals not covered in the Tentative Decision."

When a party has requested that the court prepare a statement of decision and has specified the controverted issues as to which the party is requesting a statement of decision and (optionally) made proposals as to the content of the statement of decision, "the court must . . . prepare and serve a proposed statement of decision and a proposed judgment on all parties that appeared at the trial, unless the court has ordered a party to prepare the statement." (Rule 3.1590(f).) "Any party may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment." (Rule 3.1590(g).)

Where, as here, the trial court proceeds under rule 3.1590(c)(4) and directs that the tentative decision will become the statement of decision unless, within 10 days after announcement or service of the tentative decision, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision, the rules are not explicit as to how the matter is to proceed if, in fact, a party *does* specify principal controverted issues or make proposals. The obvious implication is that in the event a party does either or both of those things, the tentative decision does not automatically become the statement of decision. And although the rules are not explicit, we presume that the court must address

11

the principal controverted issues specified and/or the proposals made just as if the court were responding to a request to prepare a statement of decision in the first instance.

What is clear, however, is that by whatever path a statement of decision comes into being, a party who finds the statement of decision deficient or ambiguous in any way *must* bring that deficiency or ambiguity to the attention of the trial court to prevent a reviewing court from drawing inferences in favor of the judgment on that particular subject. This requirement flows from section 634, which provides as follows: "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court decided in favor of the prevailing party as to those facts or on that issue." As the Supreme Court summarized the point in *Arceneaux*, "a party claiming deficiencies [in a statement of decision] must bring such defects to the trial court's attention to avoid implied findings on appeal favorable to the judgment." (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at p. 1134.) The court also made clear that "[a] party who asks only that the court explain its tentative decision by requesting a statement [of decision] as to a particular issue obviously has not fulfilled this requirement." (*Ibid.*)

Here, following the court's issuance of its tentative decision, G. B. filed a document she called an "objection." In that document, she stated that she had two areas of primary concern, one substantive and one procedural. Her procedural concerns have no bearing on the matter presently before us, so we focus on her substantive concerns. Essentially, G. B. argued that the court's decision to give K. B. primary custody of the twins if G. B. moved to Idaho was "in violation of law." According to G. B., having found that the twins' bonds to G. B. were stronger than their bonds to K. B., the court was *bound* to grant custody to G. B. in the event she moved because granting custody to

12

K. B. would "[c]learly" not be "in the children's best interest." G. B. specifically argued that "upon finding that the children were bonded more with [G. B.] than with [K. B.], it became the Court's duty to fashion a plan that would allow for 'frequent and continuing contact' with [K. B.] It should not have developed a plan which, in effect, denies [G. B.] the right to move and is not in the children's best interest."[4]

Following receipt of G. B.'s objection, the court issued its statement of decision. So far as the record shows, G. B. did not offer any other objections to the statement of decision in the trial court thereafter.

With the foregoing in mind, we turn back to G. B.'s arguments that the trial court "failed to consider or address all relevant move-away factors" because the court did not address "the probable detriment to the children when [G. B.] moves to Idaho and [K. B.] takes primary custody" and instead "focused on only one factor: the twin's relationship with [K. B.]" Recognizing that we might be inclined to draw inferences against her relating to these arguments, G. B. asserts that "[t]he doctrine of implied findings does not apply here" because she "timely objected to the decision on this ground." We disagree.

G. B. contends that in objecting to the tentative decision, she "not[ed] that the court must consider all factors under *LaMusga*." That contention is simply false. G. B. did not *mention LaMusga* in her objection to the tentative decision, let alone argue to the trial court that it was required to consider certain factors under that case in deciding the custody issue. In fact, properly understood, G. B.'s argument to the trial court was to the contrary. In essence, G. B. argued that having found she had a stronger bond with the twins than K. B. did, the trial court had a *duty* to grant her primary custody of the twins

---

**4** G. B. also argued that there was "not one iota of evidence to sustain the position that [she] would not follow any order fashioned by the Court to continue frequent and continuing contact between [K. B.] and the children" if she were permitted to move to Idaho with the twins. We address that argument, which G. B. renews on appeal, hereafter.

13

and to fashion a visitation plan that would ensure K. B. frequent and continuing contact. Thus, G. B. essentially argued that the strength of her bond with the twins trumped any other consideration that might be relevant. She *never* argued that the trial court had failed to consider or analyze certain issues relevant to the custody determination or that the trial court had improperly focused on the impact of the proposed move on K. B.'s relationship with the twins to the exclusion of all other considerations.

With a proper understanding of G. B.'s objection in mind, it is easy for us to conclude that the arguments G. B. now seeks to raise on appeal are all defeated by the inferences we must draw in favor of the judgment. For example, G. B. complains that "[d]espite the court's lengthy statement of decision, it *never* addressed the probable detriment to the children when [G. B.] moves to Idaho and [K. B.] takes primary custody." Because G. B. did not object to the statement of decision on this ground, and because the statement of decision does not affirmatively show that the court did *not* consider this issue, we are bound to infer that even if the court did not specifically mention the issue of detriment, the court nonetheless implicitly considered it and implicitly determined that, on balance, the best interest of the children would be better served by giving K. B. primary custody of the twins if G. B. moved to Idaho notwithstanding any such detriment.

It is true that the court, in its statement of decision, found that the consideration most pertinent to its determination of custody in the event G. B. moved to Idaho was the impact a move with the twins was likely to have on their relationship to K. B. For example, the court found that it was "patently evident that were [G. B.] to depart with the parenting plan she proposes vis-à-vis [K. B.]'s plan, the children's relationship would . . . wither and die." The court also found that "[o]f more critical significance in the court's consideration" than "[w]hether [G. B.'s] intention to relocate [wa]s genuine" "are the resounding testimonies of several witnesses that [K. B.] is the parent more likely to allow the children frequent and continuing contact with the other parent." The court also stated

14

that G. B. "clearly emerges, at present, as the parent more likely to frustrate, impede, or impair [K. B.'s] parenting time."

We cannot conclude from these statements, however, that the court affirmatively *failed* to consider any other relevant factors -- including, but not limited to, the effect it would have on the twins if K. B. were to assume primary custody of the twins in the event G. B. chose to move to Idaho. Certainly the court's focus was on what would happen to K. B.'s relationship with the twins if G. B. took them to Idaho with her, but we cannot say that the court necessarily focused on that issue *to the exclusion of all others*. Custody determinations require a careful balancing of a variety of considerations, which the trial court here recognized by setting forth in its statement of decision a number of those considerations. The fact that the trial court did not separately *address* each relevant issue in its statement of decision does not mean that the court did not *consider* each relevant issue -- at least where, as here, the statement of decision does not affirmatively show such a failure. Absent an affirmative showing in the statement of decision itself that the court improperly limited its consideration to the effect of the move on the relationship between K. B. and the twins, and absent an objection to the statement of decision on this basis in the trial court, we must presume "that what ought to have been done was not only done but rightly done" (*Steuri v. Junkin*, *supra*, 27 Cal.App.2d at p. 760), and that presumption defeats G. B.'s arguments on appeal.[5]

---

[5] The foregoing analysis applies with equal force to each of the following assertions that G. B. advances on appeal:

(1) "[T]he court relied on [its determination that G. B. would be more likely to frustrate the children's relationship with K. B.] to the exclusion of all other factors";

(2) "[T]he statement of decision *never* addresses the need for continuity and stability or the potential harm to the twins when [G. B.] moves to Idaho and is separated from them for significant periods of time if [K. B.] takes primary custody";

In fact, in this regard the present case is much like *LaMusga*. There, in its decision on a move-away the trial court "placed 'primary importance' on the effect the proposed move would have on 'what is now a tenuous and somewhat detached relationship with the boys and their father,' concluding that the proposed move would be 'extremely detrimental' to the children's welfare because it would disrupt the progress being made by the children's therapist in promoting this relationship." (*LaMusga*, *supra*, 32 Cal.4th at p. 1093.) The trial court did not expressly mention that it had considered the children's need for continuity and stability in custody arrangements and the harm that might result from disruption of established patterns of care and emotional bonds with their mother, who was their primary caretaker. (See *id.* at pp. 1092-1093.) As a result, the Court of Appeal concluded that the trial court abused its discretion because it did not take into account " 'this paramount need for stability and continuity in the existing custodial arrangement. Instead, it placed undue emphasis on the detriment that would be caused to the children's relationship with Father if they moved.' " (*Id.* at p. 1093.)

On review, the Supreme Court disagreed with the Court of Appeal, noting that there was "nothing in the record . . . that indicate[d] that the superior court failed to consider the children's 'interest in stable custodial and emotional ties' with their mother." (*LaMusga*, *supra*, 32 Cal.4th at p. 1093.) The Supreme Court further concluded that

---

(3) "The trial court placed undue emphasis--in fact sole emphasis--on promoting [K. B.'s] relationship with the twins";

(4) "The court did not address *any* other factors in its discussion of the move away request";

(5) "The court merely gave lip service to the children's need for continuity and stability in their established custodial arrangements"; and

(6) "The court's reliance on [the detrimental effect of a move on the twins' relationship with K. B.] to the exclusion of all other relevant factors was an abuse of discretion."

16

while "[i]n future cases, courts would do well to state on the record that they have considered this interest in stability, . . . the lack of such a statement does not constitute error and does not indicate that the court failed to properly discharge its duties." (*Ibid.*) In support of this conclusion, the court cited *Arceneaux*. (*LaMusga*, *supra*, 32 Cal.4th at p. 1093.) The court also went on to conclude that "the superior court did not place 'undue emphasis' on the detriment to the children's relationship with their father that would be caused by the proposed move" because "[t]he weight to be accorded to such factors must be left to the court's sound discretion," and "[t]he Court of Appeal erred in substituting its judgment for that of the superior court." (*Ibid.*)

As we have said, this case is much like *LaMusga*. Here, the trial court placed primary emphasis in its statement of decision on the impact of the proposed move on K. B.'s relationship with the twins. That it did so, however, demonstrates neither that the court ignored other relevant factors, such as the children's interest in the stability of their relationship with G. B., nor that the court abused its discretion by placing *undue* emphasis on the potential detriment to their relationship with K. B. We must presume that the trial court did its job properly unless the appellant carries his or her burden of affirmatively demonstrating otherwise. Here, G. B. has not carried that burden.

IV

*G. B. Has Not Shown That There Is No Substantial Evidence To Support*
*The Trial Court's Finding That G. B. Was The Parent Most Likely To Frustrate*
*The Twins' Relationship With The Other Parent*

In determining that K. B. should have primary custody of the twins if G. B. moved to Idaho, the trial court found that G. B. was "the parent more likely to frustrate, impede, or impair [K. B.'s] parenting time" and that, without therapy and counseling, G. B. would "engage in continuing and future behaviors that will frustrate" "[c]o-parenting collaboration in the joint care and supervision of the twins" and K. B.'s "interaction with

17

the twins." G. B. contends these findings are not supported by substantial evidence. We disagree.

"[I]n examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding." (*Bancroft-Whitney Co. v. McHugh* (1913) 166 Cal. 140, 142.) Moreover, "the burden is on the appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' " (*Green v. Green* (1963) 215 Cal.App.2d 31, 35.) "An appellant 'is required to set forth in his brief all of the material evidence on the point and not merely his own evidence. If this is not done, the error assigned is deemed [forfeited].' " (*Ibid.*)

In challenging the sufficiency of the evidence to support the finding that she was likely to frustrate the twins' relationship with K. B., G. B. *never* sets forth all of the material evidence in the record on the point. Instead, as will be seen hereafter, G. B. takes a somewhat scattershot approach to the sufficiency of the evidence issue, offering various arguments about why there was no substantial evidence without ever actually presenting all of the pertinent evidence to us, let alone accounting for the requirement that we must draw every inference that we can from the evidence in favor of the trial court's decision. Under these circumstances, G. B.'s challenge to the sufficiency of the evidence is without merit.

G. B. begins her sufficiency of the evidence argument by emphasizing that the trial court did *not* find that her desire to move to Idaho was maintained in bad faith, i.e., for the purpose of frustrating the relationship between K. B. and the twins. This is true. In fact, the court concluded that "[w]hether [G. B.]'s intention to relocate is genuine, it is of no import to this court's consideration." But the fact that G. B.'s desire to move to

18

Idaho may not have been born of a desire to frustrate K. B.'s relationship with the twins does not establish a lack of substantial evidence to support the trial court's finding that G. B. was more likely to frustrate K. B.'s relationship with the twins than K. B. was likely to frustrate G. B.'s relationship with them. Why G. B. wanted to move and what she was likely to do once she did move are not one and the same.

Next, G. B. emphasizes that the trial court found she cooperated with all court orders. Again, this is true. In finding that G. B. possessed the capacity to "yield to the court's judgment," the trial court specifically noted "her prior compliance with court orders." Similarly, the court noted elsewhere that "[w]ere the court to find that [K. B.] is a parent, [G. B.], compliant with prior orders, will abide by the court's finding and concomitant orders." Once again, though, this finding does not establish a lack of substantial evidence to support the trial court's finding that G. B. was more likely to frustrate K. B.'s relationship with the twins than K. B. was likely to frustrate G. B.'s relationship with them. Even if the court found that G. B. had complied with its orders in the past and was likely to do so in the future, this finding did not preclude the court from weighing the relative likelihood that each parent would frustrate the other parent's relationship with the twins and resolving that weighing in K. B.'s favor rather than G. B.'s.

G. B. contends that because the trial court found she had complied with its orders and would continue to do so, the court's finding that she was likely to frustrate K. B.'s relationship with the twins must have been based on her " 'parental attitude' " -- which she contends is equivalent to her "belief that [K. B.] was not a parent and her opposition to the parentage action." She further contends that her "decision to oppose [K. B.'s] parentage claim cannot constitute substantial evidence" for the finding that she was likely to frustrate the relationship between K. B. and the twins.

We do not agree with G. B.'s reading of the court's decision. It is true that the court observed that G. B.'s "parental attitude must be demonstrably shown to change, as

19

evinced by therapeutic reports *and conduct*, in any future proceeding before the court should or will consider [custody] modifications of further particular significance." But this observation was not directly tied to the court's finding that G. B. was the parent most likely to frustrate the other parent's relationship with the children, nor did it suggest that the trial court was faulting G. B. for opposing the parentage action. In fact, in finding that G. B. was more likely to frustrate K. B.'s relationship with the twins than vice versa, the court did not refer to G. B.'s "parental attitude" but rather to "the resounding testimonies of several witnesses that [K. B.] is the parent more likely to allow the children frequent and continuing contact with the other parent and thereby serve the twins' best interest." (Fn. omitted.) Moreover, the court specifically stated that it was G. B.'s "past behaviors," rather than her parental attitude, that "portend clinical harm to the twins' development and interactions with [K. B.]"

G. B. next argues that she "has continually supported the relationship between [K. B.] and the twins, even though she did not view [K. B.] as a parent." Thereafter, she recites evidence of the various ways she supported that relationship. To the extent she admits the existence of *any* evidence of less than supportive conduct -- a short period when she did not allow K. B. to have any visitation with the twins -- she downplays that evidence by asserting that it was "an isolated occasion" when she was "understandably shocked and upset" that K. B. had served her with the papers commencing this parentage action.

In this regard, G. B.'s sufficiency of the evidence argument particularly fails to comply with the governing principle that she " 'set forth in h[er] brief all of the material evidence on the point and not merely h[er] own evidence.' " (*Green v. Green*, *supra*, 215 Cal.App.2d at p. 35.) To comply with that principle, G. B. needed to set forth in her brief *all* of the evidence on which the trial court might have reasonably premised its finding that she was more likely to frustrate K. B.'s relationship with the twins than vice versa, not just the evidence tending to show that she has supported K. B.'s relationship with the

20

twins at various times in the past.  That G. B. has not honored the governing principle we have noted is readily apparent from the fact that she almost entirely glosses over an area of evidence potentially detrimental to her by "acknowledg[ing] that she has had serious concerns over [K. B.]'s parenting, when the twins had marks and rashes, and that there have been difficulties with the child exchanges."  Instead of thoroughly setting forth the evidence on these points and explaining how that evidence, even viewed in the light most favorable to the trial court's findings, is insufficient to support a determination that she is the parent least likely to support the twins' relationship with the other parent, G. B. proceeds directly to attempting to minimize the points she has failed to adequately explain, citing only evidence favorable to herself to support her assertion that "these reasons are not [a] sufficient basis to deny the move away request or to find that she will frustrate the children's parenting time with [K. B.]"

"A reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact, and it is not the province of such a court to search the record in order to ascertain whether it contains evidence which will support a contention made by either party to an appeal."  (*Leming v. Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 356.)  Thus, it is not for us to comb through the record to see if we can now find evidence of G. B.'s behavior with respect to her "concerns over [K. B.]'s parenting" and the "difficulties with the child exchanges" that is substantial enough to support the trial court's determination that G. B. is more likely to frustrate K. B.'s relationship with the twins than vice versa.  Rather, it was for G. B. to affirmatively show us that there is no such evidence in the record.  She has not done so.

Finally, G. B. argues that her "opposition to [K. B.]'s parentage action and her beliefs cannot supply substantial evidence of the court's finding that [G. B.] is likely to frustrate [K. B.]'s relationship with the twins."  Again, G. B. fails to present a proper challenge to the sufficiency of the evidence.  Under the rules we have previously identified, it is not enough for G. B. to argue that certain things do not constitute

21

substantial evidence.  Rather, to carry her burden on appeal, she had to put all of the relevant evidence before us and show us why that evidence, taken as a whole, was insufficient to support the trial court's finding.  She did not do this.  Accordingly, her challenge to the sufficiency of the evidence is without merit.

## DISPOSITION

The judgment is affirmed.  K. B. shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.276(a).)


       ROBIE       , J.


We concur:


       RAYE       , P. J.


       MAURO       , J.